PRICE, Judge.
This is a tort action resulting from a two-car collision at the intersection of Line Avenue and Olive Street in the City of Shreveport on March 25, 1968.
At about 8:20 p. m. on this date, Dr. Robert D. Franks was traveling south on Line Avenue. As he proceeded into the intersection his vehicle collided with an automobile being driven west on Olive Street by James E. Hughes. Franks brought this action, seeking recovery for personal injuries and for the portion of his automobile damages not covered by collision insurance. The named defendants are James O. Hughes, father of the minor, James E. Hughes, and the liability insurer of the Hughes vehicle, Allstate Insurance Company.
Franks alleges negligence on the part of Hughes in entering the intersection against a “red” or “stop” signal affecting traffic on Olive Street at the time of the accident.
*326 Defendants deny the allegations of negligence on the part of Hughes and specially plead contributory negligence against Franks in traveling at an excessive speed and failing to yield the right-of-way to the Hughes vehicle which had already entered the intersection.
The trial court found for the plaintiff and awarded damages for pain and suffering in the amount of $10,000.00.
Defendants have perfected this suspensive appeal, complaining of the trial court’s finding on liability and the amount allowed for damages.
Line Avenue is a major north-south traffic thoroughfare in the City of Shreveport with two lanes for northbound and two lanes for southbound traffic. Olive Street is a two-lane street running east and west of Line with a standard electric semaphore controlling traffic at the intersection of these two streets.
There were no witnesses other than the drivers of the automobiles involved. Hughes admitted to the investigating police officer at the scene, and later in testimony taken by deposition, that he saw the traffic light turn to caution prior to his reaching the intersection, but, not seeing any cars coming on Line Avenue, he accelerated in an attempt to go through the intersection on the caution light. He further admitted that it may have turned red after he entered the intersection.
Franks testified he first noticed the light controlling his direction of travel being green at a distance equivalent to three or four city lots prior to his reaching the intersection. He was traveling in the inside lane and did not see the Hughes vehicle soon enough to either stop or take other evasive action. Franks estimated the speed of the Hughes vehicle to be in excess of 50 mph. at the time of collision.
The officer who investigated this collision fixed the point of impact in the west portion of the middle lane for southbound traffic on Line Avenue. After being struck on the right side by the front portion of the Franks vehicle, Hughes Chevrolet traveled 252 feet and turned over.
Appellants argue that even conceding the Hughes vehicle had entered the intersection in violation of the traffic signal, Franks should have seen it in time to avoid the collision had he been maintaining a proper lookout. They further contend that the admission by Franks that he did not see this vehicle until a split second prior to impact shows that he was not maintaining the degree of lookout required by law of a motorist entering an intersection.
We have been cited cases which hold that a motorist cannot blindly enter an intersection on a favorable light, but must maintain a reasonable lookout even in the favored position. Ashenfelter v. Gertrude Geddes Willis Life Insurance Co., 209 So.2d 299 (La.App. 4th Cir., 1968). Further we are referred to the jurisprudential rule that an operator of a car on a right-of-way street must yield to any other vehicle which may have preempted the intersection. We do not find either of these principles controlling under the evidence in the record in this case.
The admission of the driver, Hughes, that he speeded up to attempt to run a changing signal light, coupled with the positive testimony of Franks that the light was green in his favor for a considerable time prior to his entering the intersection, show the cause of the accident to be solely the negligence of Hughes.
The appellants have not borne the burden required of them in proving their plea of contributory negligence by a fair preponderance of the evidence. At the apparent rate of speed of the Hughes vehicle only a fraction of a second was required for it to enter and traverse one-half to three-quarters of the width of the intersection.
Under the facts of this case, as we understand them, it would have required more than a reasonable degree of care on behalf of Franks to have avoided this accident. *327 This is not the standard required of him under the jurisprudence of this State in entering an intersection on a favorable light. Youngblood v. Robison, 239 La. 338, 118 So.2d 431 (1960); Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964).
The appellants contend the award of $10,000.00 for the injuries suffered by plaintiff is so unreasonable that the trial judge has abused the discretion vested in him in fixing the amount of damages.
The evidence reflects | the automobiles collided with considerable force, throwing Franks against the left side of his car. He suffered sprains of the cervical and lumbar regions of his spine, and injury to his left hip.-
Although Franks was not hospitalized, he contacted Dr. Carson Reed on the night of the accident and was examined by him on the following day. Dr. Reed treated plaintiff for his injuries from this date through October 17, 1969. «The cervical sprain was treated by sedation only and, although the pain resulting from the injury gradually diminished, plaintiff continued to complain to Dr. Reed about pain in the cervical region occurring at the end of a day of strenuous activity for the entire period of treatment. „ The injury to the hip was diagnosed by Dr. Reed as an incongruity or roughening of the articular surfaces on the inside of the hip joint which caused a snapping in the joint upon flexion. ^
Dr. Bennett Young, also an orthopedic surgeon, examined plaintiff, in consultation with Dr. Reed, on October 21, 1968. He felt plaintiff had sustained an avulsion type fracture of the lateral portion of the hip joint which healed with a resulting scarring on the surface of the joint. The snapping sensation, with accompanying pain to plaintiff, results from the roughening caused by the scarring in the capsule of the joint.
The medical testimony indicates that because of the presence of a considerable degree of osteoarthritis in plaintiff’s hip joint he could probably be bothered with this condition the remainder of his life. Dr. Reed was of the opinion that the clicking sensation in the hip joint would not ever improve but to the contrary would probably worsen in time due to the acceleration of the degeneration of the arthritic joint. He was further of the opinion that the sudden acceleration of the osteoarthritis in this joint immediately after the collision was the result of trauma experienced at the time of the accident. This opinion was bolstered by the fact that the history given him by Franks reflected no difficulty with the hip prior to the accident. Thus, Dr. Reed concluded the sudden progression of the arthritic condition in the hip joint logically was directly related to the accident.
Plaintiff is a doctor of veterinary medicine in Shreveport, specializing in treatment of small animals, in association with another veterinarian. At the time of the accident he was 54 years of age. He testified that it is necessary that he stand on his feet most of his working hours from 8:30 a. m. to 6:00 p. m. He further testified that prior to the accident he worked six days per week and on alternate weeks he worked seven days. Franks testified that because of the accident his schedule 'had been changed to four days one week and three days on alternate weeks, as he cannot tolerate his prior schedule due to pain associated with his hip.
The evidence also shows that prior to the accident plaintiff was very athletic. He played golf with members of the family as often as twice each week without any indication of pain or disability in his hip. Since the accident he has been forced to completely give up this sport and other strenuous activities to which he was accustomed.
The trial judge, in his reasons for judgment, awarded the total sum of $10,000.00 for disability, pain and suffering, medical and other special damages. In addition to the cervical and lumbar sprain which had almost subsided by the time of trial, the court found the medical evidence indicated that while the hip condition of plaintiff had *328 not rendered him an invalid, it was causing him serious discomfort in the performance of his work and had restricted his physical activities greatly. The trial court was apparently influenced as to the permanency of the plaintiff’s hip condition by the fact that it had persisted without improvement through the date of trial, some two years after the accident.
Since the trial judge saw and heard the witnesses testify, he is in a better position than are we to weigh the credibility of what they said. He apparently believed the testimony of plaintiff and his wife, which adequately corroborates the medical testimony of Dr. Reed, indicating a partial permanent disability because of the defective hip.
We find no abuse of the discretion accorded a trial judge under the provision of the Civil Code art. 1934(3) in determining a proper award for damages to fully indemnify an injured plaintiff.
For the foregoing reasons the judgment appealed from is affirmed, at appellants’ cost.