SCHOTT, Judge.
This is an appeal from a judgment in favor of plaintiffs for damages sustained by them as a result of an accident in which Mrs. McCalphin as a pedestrian was struck by a taxicab operated by defendant Hernandez in the 2400 block of Ursulines Avenue, in New Orleans, on February 20, 1971. The judgment was in favor of Mr. McCalphin for $2,583.62 for special damages and in favor of Mrs. McCalphin for $20,000.00 for general damages against defendant Hernandez and Manchester Insurance and Indemnity Company, the latter having been substituted as a defendant for the original defendant, NOLA Bonding Company. The original defendant, Checker Cab Company, was not cast in the judgment and is not a party to this appeal.
The trial judge gave the following reasons for judgment:
“Plaintiff, a pedestrian, was crossing Ursulines at North Rocheblave in an uptown direction. As she was entering the parking lane having almost crossed the street, she was struck by defendants’ cab which was proceeding on Ursulines toward the River. It had been raining and the street was wet. As the driver applied his brakes, he skidded to the right and struck the plaintiff. The sole cause of the accident was the cab driver’s negligence in failing to maintain proper control of his vehicle.
“Plaintiff sustained a fracture of the lateral plateau of her right tibia which was depressed and comminuted. This is a weight bearing surface. Plaintiff has reached maximum recovery and must wear a knee brace for the rest of her life and will have to use a cane when walking long distances or on uneven surfaces. Her knee is unstable, arthritic, painful, and it will get worse. The Court feels that $20,000.00 plus her special damages will reasonably compensate her.”
Defendants specify error in the Court’s finding that defendant was negligent and that plaintiff was not negligent, and they contend that the award of $20,000.00 for general damages in favor of Mrs. Mc-Calphin is excessive.
The accident occurred while Mrs. Mc-Calphin was crossing the riverbound side of Ursulines Avenue at or near the corner of North Rocheblave. Hernandez was operating his cab on the uptown or river-bound side of Ursulines approaching that intersection just before the accident. Mrs. McCalphin testified that she looked to her right and saw the approaching cab before she stepped off of the neutral ground and that she had almost reached the opposite curb when she was struck. Hernandez testified that he had been going 20 to 25 miles per hour in the left lane and first saw Mrs. McCalphin on the neutral ground *285 when he was a half block away from the intersection; as he entered the intersection she stepped off of the neutral ground into the street, a short distance on the other side of the intersection, whereupon he applied his brakes but struck her in about the middle of the roadway. There is no dispute but that his vehicle skidded to the right. Mrs. McCalphin’s testimony is generally supported by that of Mr. Robert W. Minor, who was inside of a laundry located on the downtown river side of the intersection and was looking directly across Ursulines following Mrs. McCalphin from the time she began to cross the avenue until the accident occurred. Mr. Hernandez’ testimony is generally supported by that of Mr. Lawrence Roy Bandy, Jr., who was a passenger in his cab seated in the right front seat. -
Mrs. McCalphin and Mr. Minor testified that the uptown side of Ursulines consisted of three full lanes, including a parking lane. Hernandez insisted that the roadway consisted of only two lanes including the parking lane, while Bandy conceded that there were three lanes but stoutly maintained that they were very narrow and allowed little extra room. Another defendants’ witness stated that the width of the uptown side of Ursulines Avenue is 26 feet. Mrs. McCalphin and Mr. Minor testified that she crossed at the corner and came within a step or so of the opposite curb when she was struck and Minor’s testimony that she was lying just off the curb after being struck is corroborated by that of at least two other witnesses.
The trial judge had several factual is-^ sues to resolve out of this conflicting testimony, including (1) how wide was Ursu-lines where the accident occurred, (2) how far away from Mrs. McCalphin was Hernandez’ cab when he first saw her step into the street, (3) at what part of the block did she make her crossing in relation to the Rocheblave Street and (4) where, in relation to the uptown curb of Ursulines, was Mrs. McCalphin when she was struck.
Guided by the rule that the findings of the trial judge will not be disturbed unless there is manifest error, we find no basis for disturbing his judgment in this case. The record amply supports fact findings that Mrs. McCalphin had already almost entirely negotiated the crossing when Hernandez applied his brakes and skidded from the left lane across the middle lane and into the right lane where he struck her and legal conclusions that Mrs. McCalphin was free of actionable negligence and that the negligence of Hernandez was the sole proximate cause of the accident. Had he continued in his own left lane of traffic he would not have struck Mrs. McCalphin and the accident would never have occurred.
As to quantum, plaintiff suffered the injuries as above described by the trial judge. She spent six days in the hospital, including some time in traction and was placed in a splint during this period. Before discharge the splints were removed and she was placed in a cylinder cast, which was a solid case running from the ankle to the groin area. In that she remained for about a four week period. Thereafter she was placed in a knee brace which was not removed until June, 1971, when she was placed in a short leg knee splint. She was still using crutches until October, 1971, and by December, 1971, was still dependent upon a cane and was still wearing a support. At the time of the trial in August, 1972, she was still disabled, testifying that she cannot stoop or climb or reach up to clean anything, and was still wearing a brace, which was described by the trial judge to be about five inches above and below the knee with a jointed steel support on either side of the knee. During the course of her treatment, her physician, Dr. George R. Cary, prescribed narcotics for her pain at the beginning and during the entire course of her treatment she was continuing with medication. When Dr. Cary last saw her on July 3, 1972, almost 18 months after the accident, he prescribed that she continue with the brace, continue *286 with the cane for rough surfaces or prolonged walks, and continue with muscle exercises. He also recommended surgery which would eliminate the need for the brace but which would still leave her with limitation of motion and would involve three to six weeks of hospitalization, six months of convalescence and medical expenses of approximately $1,000.00. The doctor found that she suffered traumatic arthritis as a result of this accident and that it was this condition which warranted such surgery.
Tn support of their contention that the trial judge’s award of $20,000.00 is excessive, defendants cite Franks v. Allstate Insurance Company, 242 So.2d 325 (La.App. 2nd Cir. 1970) and Brown v. State Farm Fire & Casualty Company, 252 So.2d 909 (La.App. 2nd Cir. 1971). While these cases both involve injuries which are apparently similar to plaintiff’s injury, they do not support the proposition that the trial judge abused the great discretion given to him in making awards for damages and his award will not be disturbed.
Accordingly, the judgment appealed from is affirmed with all costs of this appeal to be borne by defendants.
Affirmed.