McCALEB, Justice.
 

 These consolidated cases are actions ex delicto for recovery of personal and property damages arising out of an automobile collision which occurred shortly after midnight on October 16, 1960 in the intersection of the West Bank Expressway and Barataría Boulevard in Marrero, Louisiana, when a 1957 Ford automobile driven by Oville Breaux, Jr., which had turned into Barataría Boulevard, was struck with great force on its right side by a 1951 Plymouth car owned and driven by a negro named Nathan Francois in the northeast quadrant of the intersection. At the time of the accident Breaux, Jr., an 18 year old minor, was accompanied by a young lady named Sandra Bourgeois, also a minor,
 
 whom he
 
 was driving home from a dance which they had attended. Francois was accompanied by his wife, a 49 year old woman, and they were returning from a wedding reception. All occupants of the colliding automobiles sustained serious and painful personal injuries, Miss Bourgeois receiving a head injury which rendered her unable to remember how the accident happened.
 

 One of the suits was instituted by Hendrix Bourgeois, Sr. against Francois and Oville Breaux, Sr., the father of young Breaux, and his liability insurance carrier, Marquette Casualty Company, for judgment in solido for the damages sustained by his daughter. He alleged that the accident resulted from the joint and concurring negligence of the drivers of the colliding automobiles.
 

 The other suit was brought by Francois and his wife against Breaux, Sr., as father of his minor son, and Marquette Casualty Company for judgment in solido for the damages each sustained, it being alleged that the accident was caused solely by the negligence of Breaux, Jr.
 

 Each suit was resisted by the defendants therein and, in the Francois suit, Oville Breaux, Sr. reconvened, individually and as administrator of his son’s estate, alleging that the accident was attributable solely to the Francois’ imprudence.
 

 
 *880
 
 On the issues thus formed a trial was had, which resulted in judgments in favor of Bourgeois, individually, for $588.80 and for $3,500, as administrator of the estate of his minor child, against all defendants in solido. In the Francois suit, there was judgment dismissing the husband’s claims in entirety and also the reconventional demand of Breaux, Sr. However, judgment was rendered in favor of Francois’ wife for $5,000 and against Breaux, Sr. and Marquette, in solido. Breaux, Sr., Marquette and Francois appealed to the Court of Appeal, Fourth Circuit, where one judgment was amended so as to decrease the award to Bourgeois individually from $588.-80 to $113.80 and, as thus amended, all judgments were affirmed. See Bourgeois v. Francois, La.App., 152 So.2d 383. On application of Breaux, Sr. and Marquette we granted certiorari.
 

 As stated above, the accident happened shortly after midnight in the northeast quadrant of the intersection of the West Bank Expressway and Barataria Boulevard. The Expressway is a four-lane highway, two lanes for traffic travelling in a westerly direction and two for traffic proceeding east. The traffic lanes are separated by a wide neutral ground and at the intersection of Barataria Boulevard, which crosses the Expressway at right angles, there are paved indentations in the neutral ground which are reserved for expressway traffic turning left into Barataria Boulevard. This Boulevard is a two-way thoroughfare running north and south.. The intersection of the Expressway and the Boulevard is controlled by six semaphore signals. Two of these control westbound express traffic and are situated on each side of the westbound lanes of the Expressway. Two similar standards or semaphores, are on the eastbound lanes of the Expressway and two others are located on the neutral ground, one on each side of Barataria Boulevard controlling .traffic making a left turn from the Expressway into the Boulevard. The speed limit on the Expressway is 50 miles per hour.
 

 Young Breaux was taking Miss Bourgeois home from a dance and was driving on the Expressway in an easterly direction, it being his- intention to make a left turn into Barataria Boulevard. When he arrived at the intersection he pulled into the indented land on the neutral ground and stopped his car in obedience to a red-traffic light. While he was waiting for the signal to turn green, or rather for a green arrow which appears for traffic intending to make a left turn into Barataria Boulevard, he noticed the head lights of the Francois car approaching the intersection in one of the west-side lanes reserved for traffic proceeding in a westerly direction. At the time he first saw the lights of the approaching car, Breaux estimated that the car was some 250 or 300 feet away from the intersection, travel-
 
 *882
 
 ling at a speed of between 40 and 55 miles per hour. When the signal light changed to the green arrow in his favor, he again noticed the headlights of the approaching Francois car which he estimated was then :about 100 to 150 feet from the intersection and still travelling at the same speed. Believing that this car would stop in obedience to the red traffic signal then facing its ■driver, Breaux began making his turn into Barataría Boulevard on the favorable green arrow signal. He had almost completed "his left turn into Barataría Boulevard and the greater part of his car was in the Expressway northeast quadrant of the intersection when the Francois vehicle rammed the right side of his car causing the .substantial property damage and personal injuries sued for herein.
 

 Francois testified that he was traveling at a speed of 40 to 45 miles per hour; that he proceeded into the intersection with the green light in his favor; that he never saw the Breaux vehicle prior to •the accident and never slackened the speed of his car, and that he struck the Breaux ■car just after his car had entered the intersection. The testimony of Francois’ wife is of no value. She was unable to relate any salient facts except that she maintains that her husband had the green light, contrary to a statement she had given previous to the trial.
 

 The Court of Appeal properly deduced that Francois’ testimony was not credible, particularly with reference to his claim that he entered the intersection on a favorable green light. His evidence was directly contrary to the evidence of young Breaux and Officer Irving Trosclair, a deputy sheriff, who made a police investigation of the accident and who stated that Francois admitted that night that he had run a red light.
 

 Notwithstanding its finding that the direct, proximate and primary cause of the accident was Francois’ gross negligence in driving into the intersection on an unfavorable signal and without paying any attention to the Breaux car which was traversing the crossing when he ran the red light (Francois says he did not see the Breaux car and, therefore, did not attempt to stop), the Court of Appeal held that young Breaux, albeit driving in compliance with the semaphores controlling traffic at the intersection, was nonetheless guilty of negligence which contributed to the accident because his own testimony showed that he saw the Francois car travelling at between 40 and 55 miles per hour at a distance of 100 to 150 feet from the intersection at the time he began to make his left turn on the green arrow and that he should have realized, before continuing forward, that it would be hazardous to go into the intersection in view of the “extraordinary circumstances” confronting him.
 

 
 *884
 
 The Court of Appeal, citing-two of its own cases and- Kientz v. Charles Dennery, Inc., 209 La. 144, 24. So.2d 292; acknowledged that the rule is established in this State that a motorist travelling on a- favored street,- and, a fortiori, . on a street controlled by electric semaphore lights, is entitled- to assume that drivers on the less favored street, and particularly traffic facing a red light, will obey the law and respect his right-of-way. Indeed, it is now well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found derelict. See Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Youngblood v. Robison, 239 La. 338, 118 So.2d 431 and Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919.
 

 But, as aforesaid, the Court found that this case came within the narrow exception to the rule and that young Breaux’s own testimony showed that he was guilty of negligence because he saw the Francois car approaching the intersection at a point and at a speed from which a reasonably prudent driver under similar-circumstances would have realized that the oncoming- car
 
 “*
 
 * * either, could, not. .or would not stop for the intersection”. This deduction was premised on two factors. First it was stated that it should have been apparent to Breaux the second time he saw the Francois car, estimated.by him as 100 to 150 feet from the intersection and travel-ling at 40 to 55 miles per hour, that it could not or would not stop. Secondly, the Court of Appeal stated -that Breaux was negligent in view of his admission on the stand that he did not look at the approaching car again after he started his turn and proceeded-intq the intersection.
 

 We think that both of these conclusions are faulty and rest 'on an unrealistic appraisal of young Breaux’s testimony as a whole. . . •
 

 Initially, we hasten to point out that the Court of Appeal was not justified in binding young Breaux to his calculations of the speed of the Francois car or the distances that car was irons the crossing at the times he observed it, for his testimony, when read as a whole, clearly manifests that he was merely trying to answer the questions of the trial examiner to the best of his ability and that all of his answers with respect to the distances and speeds were pure guesses which were qualified by the statement of the witness that it was night time and, for this reason, he was unable to make a reasonably accurate
 
 *886
 
 appraisal. It is to be borne in mind that .young Breaux testified that he could not •see the car but only had vision of its ■oncoming headlights. Under the circumstances, it seems certain that it was exceedingly difficult for him to gauge either the speed of the other car or the distance ■it was from the intersection. This inability 'is plainly revealed by young Breaux’s evidence. For example, he gave the following testimony on cross-examination:
 

 “Q. Did it appear to you he was exceeding the speed limit ?
 

 “A. Well,
 
 it was at
 
 night, and I figured he was going around the speed of between FORTY (40) and FIFTY-FIVE (55) MILES an hour.
 
 I could not say for sure.
 

 "“Q. You testified that you did not see NATHAN FRANCOIS slow ' down; is that correct?
 

 '“A.
 
 I did not NOTICE because it was at night. You can’t tell at night if somebody is going to slow down at that distance away; and I thought he was going to stop for the RED
 
 LIGHT,
 
 and he had TIME to stop.”
 
 (Italics ours).
 

 The foregoing, and other evidence given by Breaux, demonstrates, we think, that he was not imprudent. He stopped in obedience to the semaphore light and waited in the proper lane until it changed to green. While waiting, he noticed the lights of a car approaching from the opposite direction, which appeared to be travelling within the speed limit. When the signal changed to green, he was entitled to assume that the traffic coming from the opposite direction would stop, especially since it was at night time and he could not accurately estimate the speed of the car and there was nothing about its appearance which would lead a reasonably prudent motorist to believe that its driver would run a red light.
 

 It was correctly observed by the Court of Appeal in Blue Ribbon Cleaners v. Aetna Casualty & Surety Co., 125 So.2d 613, that: “If a motorist, entering an intersection properly on a green traffic light and proceeding lawfully through it, must do so at his peril, then traffic signals cease to be safety signals and become traffic traps.”
 

 The Court of Appeal in this case also erroneously finds young Breaux negligent in failing to look at the Francois car again after he started the left turn. We do not believe that it was incumbent upon Breaux to look again after he began his turn, if he was justified (and we find he was) in believing that the driver of the Francois car would obey the red semaphore signal facing him. On the contrary, when Breaux started to make his left turn into Barataría Boulevard, any slight obligation he had with regard to Expressway traffic facing a red light ceased and it became his duty to watch
 
 *888
 
 for boulevard traffic which might haye been travelling in the same or an opposite direction. This is exactly what young Breaux did. He was asked on .cross-examination:
 

 “Q. No, when the light was GREEN and you began to make your turn. From the time you began to make your move until you were struck, did'you at any time look to see the FRANCOIS car?
 

 “A. No, I never looked towards the lane he was coming, because I had to watch where I was GOING.
 

 “Q. In other words, you were looking straight ahead ?
 

 “A. Yes.
 

 “Q. You just assumed that he would stop because he had the RED light; is that it?
 

 “A. I figured he would stop because he had enough time to stop.
 
 (Italics ours).
 

 A reading of the record has convinced us that young Breaux’s statement, which is unquestionably truthful, does not show that he was guilty, of negligence which had causal connection with the unfortunate accident.
 

 In the lower court Breaux, Sr. filed a re- , conventional demand against Francois to recover for the injuries received by his son in the mishap. However, in the application for writs and in brief before this Court, his counsel has not pressed this demand. Perhaps counsel felt that Francois, who carried no liability insurance, may be judgment proof. At any rate, in view of the failure of Breaux, Sr. to pray for judgment on the reconventional demand in this Court, we consider his claim to be abandoned.
 

 For the reasons assigned, the judgment of the trial court, as amended and affirmed by the Court of Appeal, is annulled and reversed and it is now ordered that the demands of plaintiffs in these consolidated cases against Oville Breaux, Sr. and Marquette Casualty Company be dismissed at their costs.
 

 HAMITER, J., is of the opinion that the decrees of the Court of Appeal should be affirmed.