YARRUT, Judge.
This suit arises from a collision between a trailer-truck, operated by John B. Ben-venutti and owned by Intracoastal Truck Line, and an automobile operated by Ivy Frickey, and owned by Ed Martin Seafood Company. Plaintiff is the widow of a passenger in Mr. Frickey’s car who was killed in the collision. On behalf of herself and her four minor children, Plaintiff sued American Casualty Company, liability insurer of Intracoastal Truck Line, and Travelers Insurance Company and Market Insurance Company, liability insurers of the automobile driven by Mr. Frickey.
Plaintiff and American Casualty Company made a settlement, and the latter was dismissed from the suit. Plaintiff appealed from a judgment, in favor of Travelers and Market Insurance Companies, dismissing her suit against them.
The only issue before us is whether Mr. Frickey committed any negligence which was a proximate cause of the accident.
The collision occurred at the intersection of Louisiana Street and the West Bank Expressway in Westwego, Louisiana at *53 8:30 P.M. on January 25, 1965. The truck driver testified he was traveling east on the Expressway at approximately 25 or 30 miles per hour; that, as he neared the intersection, the semaphore light changed to amber; and that he drove through the intersection without slowing his speed or sounding his horn.
Mr. Frickey testified he was traveling south on Louisiana Street; that he stopped for a red light when he reached the intersection at the Expressway; that, as he stopped, he noticed the oncó’ming trailer-truck some 300 to 350 feet west of the intersection proceeding at a moderate speed; and that, when the light changed in his favor to green, he proceeded at a moderate rate of speed across three lanes of the Expressway when the front of his car collided with the cab of the trailer-truck.
The fact that the light was green in Mr. Frickey’s favor was corroborated by the following witnesses: Alex Schouest, a brother of the deceased, who was driving a vehicle that was stopped parallel to that of Mr. Frickey’s vehicle at the red light; Carl Abadie, the decedent’s cousin who was a passenger in the Schouest vehicle; and Herbert Abadie, an uncle of the deceased, who was a passenger in a car stopped immediately behind Mr. Frickey’s vehicle.
The trial judge found as matters of fact that Mr. Frickey observed the trailer-truck when it was 300 to 350 feet away from the intersection proceeding at a moderate speed and that Mr. Frickey did not “jump” the light, but started off on the green light in “a normal manner.” We agree with the trial judge’s conclusions.
It is well settled that a motorist, proceeding into an intersection on a favorable light under an electric semaphore signal system, may assume that other motorists on the intersecting street, faced with an unfavorable light, will observe and obey such a light and that, where a driver is proceeding on a favorable light, he is not held to the same degree of care as if no such system prevailed. Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919; Bourgeois v. Francois, 245 La. 875, 161 So.2d 750; Derouen v. American Employers Insurance Company, 240 La. 486, 123 So.2d 896.
However, there remains one more contention urged by the Plaintiff, i. e., that Mr. Frickey’s drinking was a proximate cause of the accident. In this connection, Plaintiff called Dr. Sam Nadler, a biochemist who is a specialist in the field of blood alcohol research. Dr. Nadler testified that, taking into account Mr. Frickey’s size and weight and his consumption of six or seven beers during a four-hour period, in his opinion there would be some impairment of Mr. Frickey’s reflexes. However, Dr. Nadler admitted the effect of alcohol varies from person to person and that the alcoholic content in Mr. Frickey’s system was well below the level at which it is certain that a person will become intoxicated. The trial judge evaluated this testimony in the following manner:
“* * * [T]he Court is convinced that his [Dr. Nadler’s] conclusions placed the residue of alcohol left in Frickey’s blood stream at a level where it was extremely dubious that it could affect or impair Frickey’s driving ability or his judgment to any substantial degree or to such a degree that he would be considered negligent in driving an automobile. The Court also considered the fact that Dr. Nadler did not see or examine Frickey until many months after the accident and, therefore, his conclusions are largely hypothetical and not drawn from first hand observations, tests, or conclusions.
“Certainly, the Court cannot accept such dubious theoretical testimony as prevailing against the overwhelming testimony of so many witnesses which led the Court to the conclusion that Mr. Frickey’s ability to drive was not impaired.”
*54 We agree Plaintiff did not prove that Mr. Frickey’s drinking was a proximate cause of the accident; hence, the judgment appealed from is affirmed; Plaintiff to pay the costs of this appeal.
Judgment affirmed