246 So.2d 331 (1971)
Pearl ROME and Percy Rome
v.
S. D'ANTONI, INC., Harvey M. Miller and the Travelers Insurance Company.
No. 8281.
Court of Appeal of Louisiana, First Circuit.
March 15, 1971.
Rehearing Denied April 19, 1971.
Writ Refused May 24, 1971.
*332 Alvin Tyler & Associates, Baton Rouge, for appellant.
William A. Norfolk, of Taylor, Porter, Brooks & Phillips, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiffs, husband and wife, appeal the judgment of the trial court rejecting their demands for damages for personal injuries to Mrs. Rome, related medical expense, and also property damage to the Rome automobile, sustained and incurred in an intersectional collision with a truck owned by defendant S. D'Antoni, Inc., insured by Travelers, and being driven by D'Antoni's employee, Miller. The pivotal issue is the degree of care imposed upon a motorist proceeding through an intersection on a favorable traffic signal. The trial court found that Miller was negligent in running a red or unfavorable signal, but also held Mrs. Rome was negligent even though she was proceeding on a green or favorable signal. On appeal, plaintiffs contend the trial court erred in holding Mrs. Rome guilty of negligence constituting a proximate cause of the accident, and in rejecting *333 their claims for damages. Defendants have answered the appeal contending the lower court erred in holding Miller negligent, and urging affirmation of the decree rendered below on the ground that Mrs. Rome was solely at fault. Alternatively, defendants maintain that the judgment of the trial court should be affirmed because of Mrs. Rome's contributory negligence. We affirm the judgment of the trial court.
There is little, if any, dispute concerning the facts. The accident occurred June 24, 1967, at approximately 3:50 P.M., at the intersection of McClelland Drive, a paved two-lane street, and Airline Highway, a paved, four-lane roadway, in Baton Rouge, Louisiana. Mrs. Rome, proceeding easterly on McClelland Drive, stopped in obedience to an unfavorable traffic signal. Miller, traveling southerly in the outside southbound lane of Airline Highway, was driving a tractor and trailer having a combined length of approximately 54 feet.
Miller's testimony was that he entered the crossing on a caution light which turned red at just about the time the tractor portion of the vehicle passed under the light. Mrs. Rome's testimony was that she stopped for the light, looked to her left, saw a black Oldsmobile stopped in the outside southbound lane of Airline Highway and, seeing no other traffic approaching from her left, shifted the gears of her vehicle and struck the side of the truck which she never saw prior to the impact. Mrs. Rome conceded that she lived in the neighborhood and was apprehensive about this intersection.
The testimony of the investigating officer established the point of impact at a spot six feet north of the south parallel of McClelland Drive and four feet east of the west parallel of Airline Highway. The officer also testified that after the accident, he interrogated Miller who admitted that he could not stop in time and ran through a red stop light.
The evidence also discloses that the front of the Rome vehicle struck the right side of the trailer at a point approximately 32 feet from the front of the tractor-trailer assembly.
A point of some contention is whether Mrs. Rome's view to her left was blocked by another large truck allegedly parked on the shoulder of the road just north of the intersection. Plaintiffs contend a truck was so parked. However, the only testimony to that effect was given by Mrs. Rome's brother-in-law, James Hammett, who stated that he arrived at the scene shortly after the accident and was told by Miller that Miller had to cut around a truck parked on the shoulder of the highway, and after coming around the parked vehicle, Miller then noted that the light was red, but that he, Miller, was then so close to the intersection he could not stop. Miller's testimony expressly contradicts Hammett's on this score. Miller testified that he approached the intersection in the outside lane and that he was not aware of any vehicle to his right. He did not mention "coming around" another vehicle before proceeding into the crossing. Despite the insistence of counsel for appellant that Mrs. Rome testified to the presence of a truck on the shoulder blocking her view, our review of the record discloses that she testified to the precise opposite. In this respect, we note her testimony on cross-examination appearing at pages 103 and 104 of the transcript:
"Q Is it your testimony that you never did see this semi-tractor trailer rig up until the accident happened?
A Yes, sir.
Q That's your testimony?
A Yes.
Q Even though you were looking in that direction you never did see it?
A I did not see the truck. I did not see what was behind the car. I didn't look that far back.
Q You couldn't see the truck because of the car?
*334 A I don't know that I couldn't see it. I just didn't look that far back.
Q Well, you looked in the direction of that black Oldsmobile?
A Yes, sir.
Q Was there anything other than that black Oldsmobile to obstruct your view to the left?
A Not as I can remember. My main interest when I look somewhere is what's the immediate thing, the first thing.
Q But why did you look to the left?
A That is a habit I have had all my life
Q Why?
Alooking at intersections. One thing mostly to look at that intersection is my husband almost had an accident there from a car running a red light not long before that.
Q Were you looking to see if there was anything coming?
A Yes, sir.
Q And seeing nothing you went on out?
A Other than seeing this car stopped I saw nothing else."
Moreover, if a truck was actually parked on the shoulder of the highway, as Hammett testified Miller related to him, a vehicle in such position would not have required Miller to "go around" because it would not have been in Miller's path. Neither would a truck so parked have blocked Miller's view of the traffic light.
Considering the testimony, we are of the view the trial court was eminently correct in holding Miller guilty of negligence in failing to obey an unfavorable traffic signal.
Appellant maintains the trial court erred in holding Mrs. Rome guilty of negligence because, pursuant to Youngblood v. Robison, 239 La. 338, 118 So.2d 431, a motorist proceeding on a favorable traffic light is not required to look before entering an intersection, but may rely on the assumption that other motorists will obey the traffic signal and stop. Appellant concedes the jurisprudence established by Bourgeois v. Francois, 245 La. 875, 161 So.2d 750, also holds that a motorist may not rely upon a traffic signal and assume that other motorists will stop where the driver knows or has reason to know that the other motorist will not stop, and where the driver with the favorable signal has a reasonable opportunity to avoid the accident. On this basis, it is argued that since Mrs. Rome was not obliged to look, because she had a favorable signal, and because her vision was obstructed by the truck parked on the shoulder of the highway, she may not be penalized for looking and failing to see the oncoming truck operated by Miller.
As contended by appellants, Youngblood v. Robison, above, is authority for the rule that a motorist proceeding on a favorable traffic signal is not obligated to look to either the right or left before entering an intersection. However, the rule is not without its exception. The Supreme Court has also repeatedly held that where the motorist on the favored street could have avoided the accident by the exercise of the slightest degree of observation and care, he will be deemed guilty of negligence constituting a proximate cause of the accident. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company of Chicago, 232 La. 831, 95 So.2d 328; Steele, Individually and for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919, and Bourgeois v. Francois, 245 La. 875, 161 So.2d 750.
*335 Appellants urge that a rule which exonerates a motorist who does not look in cases of this nature, but which renders liable one who looks and does not see, can only result in encouraging drivers not to look. Appellants also contend that the instant case does not fall within the exception to Youngblood v. Robison, above, recognized in Bourgeois v. Francois, above, and the authorities cited therein, because in the instant case, Mrs. Rome's view was blocked by a parked truck.
In answer to appellants' first argument, we initially observe that the driver who does not look is not granted absolute immunity from liability. If, under the circumstances, the exercise of the slightest degree of care and caution on the part of such a driver could have avoided the accident, the driver on the favorable street is to be deemed negligent. A driver who looks and fails to see an imminent danger which is plainly visible is in no better legal position than one who could have obviated an accident by the exercise of the slightest degree of care or caution but who did not exercise any degree of care at all. Looking and failing to see that which is plainly to be seen is the equivalent of failure to exercise the slightest degree of care.
In the case at hand, we find that had Mrs. Rome exercised the slightest degree of care and caution, she could and should have seen that Miller was in the intersection when she proceeded forward four feet into the side of Miller's truck. Under the circumstances, we hold that she failed to exercise even that slightest degree of care and caution required to exonerate a motorist proceeding on a favorable traffic signal.
Nor do we find that Mrs. Rome's failure to see the Miller truck is excusable, as contended by her counsel, on the ground that her view was blocked by a truck parked on the shoulder of the highway. Our previous review of the testimony on this point convinces us that plaintiff has not established the presence of such a vehicle by that preponderance of evidence required by law.
The judgment of the trial court is affirmed at appellants' cost.
Affirmed.