BOLIN, Judge.
Martin J. Richard sued Jackson Jones and his wife, Beatrice W. Jones, and their insurer, St. Paul Fire and Marine Insurance Company for personal injuries and property damage resulting from an in-tersectional collision between automobiles driven by Richard and Mrs. Jones. In a supplemental petition making the City of Shreveport a party defendant, it was alleged the City had improperly rephased an overhead traffic signal at the intersection which was malfunctioning at the time of the accident. For reasons made a part of the record the trial judge found the accident was caused solely by the negligence of Beatrice Jones. Judgment was rendered in favor of Richard against Mr. and Mrs. Jones and their insurer, in solido, for $3160.00 but rejected Richard’s demands against the City of Shreveport, and Mr. and Mrs. Jones appealed. Since the plaintiff has neither appealed nor answered the appeal, it is conceded the judgment as to the City of Shreveport is final. Also final, insofar as plaintiff is concerned, is the adequacy of the award. We affirm the judgment of the lower court.
The accident occurred in the intersection of Lakeshore Drive and Jewella Avenue, at approximately S :40 p. m., March 20, 1970, during a rain. Both streets have four lanes for traffic. Lakeshore runs east and west and Jewella north and south. Traffic at the intersection is controlled by an electric multiple signal light located above the center of the intersection. All four sides of the signal light are set to reflect alternately green, amber, red, and green with a green left-turn arrow.
Prior to the collision Mrs. Jones was proceeding east in a Buick car on the inside lane of Lakeshore, intending to turn left on Jewella. Richard was driving his Chevrolet west on Lakeshore, intending to cross the intersection and continue on Lakeshore. Richard testified he approached the intersection on the inside lane following two other vehicles. He said he saw the light turn from red to green and drove his car to the right or curb lane in order to get from behind the two vehicles in front of him. He stated that prior to the time he had entered the intersection Mrs. Jones turned left directly in front of him and the front of his car struck the right side of her car.
Mrs. Jones said she made the left turn pursuant to a left-turn arrow. She had two passengers in the car with her who generally corroborated her version of the accident. The drivers of the two vehicles who were proceeding in front of the Richard automobile corroborated the testimony of plaintiff. They stated they were waiting at the intersection for the light to change from red so they could proceed. These two witnesses said the light had turned from red to green prior to the time Mrs. Jones proceeded into the intersection in order to make her left turn in front of them.
It was alleged the traffic light was malfunctioning but neither Mrs. Jones, her passengers, Mr. Richard, nor the other two motorists testified as to any malfunctioning. A city police officer said he reported the traffic light was “stuck” on the Jewella side on the same day of the accident and prior thereto. Much testimony was given by employees of the municipal traffic department as to the manner in which the traffic light functioned at the intersection. Prior to this accident the time sequence of traffic lights governing motorists traveling east on Lakeshore, as was the case with Mrs. Jones, was as follows: as the red light went off, a green light and a green left-turn arrow would be simultaneously displayed; all other traffic signals at the intersection would be red; and the green and left-turn arrow would remain on together for approximately thirty seconds. On the morning of the accident the city traffic department had recycled the lights, reducing the time for making a left turn on the left-turn arrow to ten seconds and, whereas Mrs. Jones had previously had thirty seconds to make a left turn with the *720 left-turn arrow, under the new cycling she had only ten seconds. Under the new cycling the traffic light for eastbound motorists on Lakeshore, after displaying a red would display a green and a left-turn arrow together just as before, but the left-turn arrow would go off after ten seconds rather than thirty; then after a clearance period of approximately three seconds the green light would go on for westbound traffic on Lakeshore.
The experts from the municipal traffic section testified that if the traffic light had been malfunctioning it would have been probable that two lights would have come on rather than one, which would have made it evident to a motorist on Lakeshore the light was not properly functioning. Under cross-examination some of these witnesses testified it might have been possible for only one light to be showing when the signal light was not functioning properly but they had never known of such happening and none of the witnesses believed this was a reasonable probability.
Mrs. Jones had been traveling to and from work to her home in Shreveport, passing through this intersection, regularly for several years. The trial judge concluded the traffic light was not malfunctioning and Mrs. Jones was apparently not observing the light but had assumed the left-turn arrow would remain on longer than it did. Whatever caused her to turn left as she did, we think the evidence preponderates that she began her turn after the left-turn arrow had gone off; that Richard entered the intersection on a green light and was free of negligence; that the accident was caused solely by the negligence of Mrs. Jones in making a left turn directly in the path of plaintiff at a time when he could not avoid the collision.
Counsel for appellants rely on Earles v. Volentine (La.App. 2d Cir. 1966) 191 So.2d 740, and Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964), which held a left-turning motorist who enters an intersection on a green left-turn arrow is entitled to assume that he will be allowed to complete his negotiation at the intersection by oncoming traffic. The foregoing rule was recently reiterated and followed by this court in Jones v. State Farm Mutual Auto Insurance Co. (La.App. 2d Cir. 1968) 209 So.2d 525, and in Kirby v. Brumfield (La.App. 2d Cir. 1972) 268 So.2d 311. These cases are factually distinguishable from the instant case as we find Mrs. Jones did not enter the intersection on a green left-turn arrow.
The impact of the collision between the two automobiles caused Richard to be thrown forward and his head struck either the steering wheel or the dashboard of his car. His lower teeth came through his lip and he was taken to the hospital where sixteen stitches were necessary to close the wound. It was necessary to crown one tooth and another was chipped. The lower court awarded Richard $2500 for his personal injuries and $660 as damages to his automobile which was a total loss. No question has been raised by appellants on appeal as to quantum and we find no error in this portion of the judgment.
The judgment of the lower court is affirmed at appellants’ cost.