REDMANN, Judge.
A guest passenger wife appeals from a judgment which dismissed her husband’s insurer from her suit for personal injuries from a two-car collision and cast the other driver and his insurer for $3,000. The latter parties also appeal, both in the wife's suit and in a consolidated suit by the husband in which they were cast for $500 personal injury to him, $2,774.70 loss of the wife’s wages, and $586 medical and property damages.
Issues include liability of each driver and quantum.
We reverse. We hold the husband alone liable and therefore cast his insurer and dismiss his own suit.

Facts

The generally north-south Airline highway 1.7 miles south of Laplace is divided by a 3.5' wide concrete median and has two lanes in each direction. On a clear, dry *241 night Schexnayder was driving north in the left northbound lane at 65 or 70 mph, with plaintiff Mrs. Schexnayder as a passenger.
Defendant Guillory, with his wife and baby as passengers, drove out of a trailer park on the west side of the highway, stopping at a stop sign before crossing the southbound lanes and stopping (or virtually so) again before beginning a turn into the northbound lanes. He (and his wife) saw Schexnayder’s lights “far” to the south— he estimated a quarter or half mile — and Guillory proceeded “slowly” (as opposed to hurriedly) into the right northbound lane.
Both Mr. and Mrs. Schexnayder testified they first saw Guillory’s car as it entered the northbound lanes in the process of making its left turn. Schexnayder estimated he was only perhaps 100'' away (or 50, or 150') when Guillory drove into his path. Schexnayder testified he immediately applied his brakes but his car swerved, its left rear striking the concrete median while its right front “went partially in his [Guillory’s] lane — in the right lane” and the collision occurred. Schexnayder’s right front struck Guillory’s left rear.
Guillory testified he had attained a speed of about 30 mph prior to impact, since his two-speed automatic transmission had shifted to high. The investigating State Trooper, asked whether Guillory had told his speed, answered “I believe he was doing 35 to 40.” Mrs. Guillory (herself a driver) estimated about 30, but would not deny it could have been only 25.
The Schexnayder car continued (by State Trooper’s measurement) 187' past estimated point of impact, staying in the left northbound lane. The Guillory car continued 115' , crossing the median and coming to rest in the southbound lanes.
The testimony of Mr. and Mrs. Guillory ' is that they were in the right lane. This is. also Schexnayder’s testimony. The State
Trooper, from the evidence he saw, was “certain” that the collision did occur in the right lane as Schexnayder testified (although the trooper said all of Schexnayder’s skid marks were in the left lane). (Mrs. Schexnayder at one point testified their car did not cross into the right lane, but she also testified “I don’t know where it was when we struck him because I don’t remember anything.”)
The State Trooper testifed that from the debris and ' skid marks he estimated the point of impact. From that point back to where Schexnayder’s skid mark began was 50'. From point of impact to the near (north) end of the median cut (through which Guillory entered the highway) was 250'. (Despite the roundness of numbers, the trooper testified he measured with a measuring device.) There was damage to the median about 25' before impact where Schexnayder’s left rear bumper and- wheel struck it (causing indentation to the bumper and yellow paint from the median on the wheel).

Liability

The trial judge’s reasons were, essentially, that Guillory was at fault for making an unsafe left turn and obstructing Schex-nayder’s right of way. He concluded that excessive speed by Schexnayder was not proven (we agree), and that Schexnayder did not have sufficient distance, when first aware of Guillory, within which to stop his car going 70 mph.
Since in fact Guillory travelled 265' (allowing 15' for his car’s length) past the intersection during the same time that Schexnayder travelled from wherever he was to 250' past the intersection; and since Schexnayder’s relatively constant speed was probably twice that of Guillory’s highest attained speed and more than twice Guillory’s average speed, it is evident that Schexnayder travelled at least 530'[1] after *242 the time when he in fact saw Guillory enter the highway and before collision. This distance would have enabled Schexnayder to bring his car to a stop.
We do not hold a driver on a preferred roadway ordinarily obliged, towards another entering his right of way, to the highest care of instantaneous notice and reaction and panic-stopping in minimum stopping distances. His duty towards such a driver may be only that of slightest care; see Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964). Nevertheless, after the unfavored driver has completed his turn (right or left) there comes a point (e. g., certainly, a mile down the road) at which the turn is causally unrelated to a rearend-ing; compare West v. Ryder Truck L., Inc., 218 So.2d 106 (La.App.1969), writ refused 254 La. 130, 222 So.2d 882. By that time the case may become one of two cars on the same highway, and of simple rearending by the overtaking car (and the overtaking driver’s duty no longer only slightest care).
We point out, moreover, that here Schexnayder needed not to stop but only to slow to (approximately) Guillory’s speed, requiring less distance than stopping distance. Further reducing the required distance, in terms of initial distance between cars, is the fact that Guillory’s car was travelling away from Schexnayder’s.
And finally we point out that here, with Schexnayder in the left and Guillory in the right of two northbound lanes, Schexnay-der could have safely passed without even reducing his speed, or at least without reducing it to Guillory’s.
We cannot escape the conclusion that this accident occurred not because Schexnayder did not have more than ample time and distance to avoid collision, but because he waited an unreasonably long time after seeing Guillory to begin actual braking when much less than 50' from Guillo-ry’s car,[2] despite having seen it enter the highway, at a time when Schexnayder had to be over 500 feet (and probably more like 1,000 feet) away from impact.
Guillory’s prior “obstruction” of the left lane by turning had become causally unrelated to the partial rearending which occurred, and the sole causative fault was Schexnayder’s.

Quantum

The trial judge found plaintiff wife’s injuries from the accident were a mild cerebral contusion, a slight sprain of cervical paraspinous muscles, and an aggravation of pre-existing arthritic spur-rings and narrowed intervertebral spaces. He allowed $2,000 for these items, which, we conclude, is within his “much discretion” under C.C. art. 1934 subd. 3.
He also awarded $1,000 for a “flare-up of nervousness and tensions with the attendant results of headaches, dizziness and complaints.” Plaintiff wife’s chief complaint is that she proved a traumatic neurosis of disabling proportion, for which a substantial award is due. Despite the sole psychiatrist’s contrary conclusion (based on a history from the patient alone), the trial judge reasoned that the disability pre-existed, citing recorded earlier difficulties. We simply are not in a position to find fault with the trial judge’s resolution of this issue in view of the supportive evidence, notwithstanding the psychiatric testimony.

Decree

The judgments appealed from are reversed.
In case No. 5254 plaintiff’s suit is dismissed at his cost.
*243 In case No. 5255, there is judgment in favor of Guillory and his insurer. dismissing plaintiff’s demand against them, at plaintiff’s cost, and judgment for $3,000 in favor of Mrs. Marguerite S. Schexnayder against Allstate Insurance Company, with interest from judicial demand and costs (including medical deposition and expert fees as fixed by the trial court).
Reversed and rendered.

. This distance would be 616' if his speed were 70 and Guillory’s a constant 30; 1,232' if his speed were 70 and Guillory uniformly accelerated from 0 to 30 mph (i. e., averaged 16 mph) in 265' (requiring 12 seconds).

. Perhaps as little as 23' (deducting 10' from the 50' skid as attributable to Schexnayder’s wheelbase length, and 17' as the distance Guillory travelled at 30 mph while Schexnayder was travelling 40' [50' - 10'] at 70 mph).