282 So.2d 830 (1973)
HARTFORD ACCIDENT AND INDEMNITY COMPANY et al.
v.
Leander FINLEY
No. 9442.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied September 25, 1973.
*831 W. D. Atkins, Baton Rouge, for appellants.
Wendell G. Lindsay, James A. George, Charles R. Moore, Baton Rouge, for appellee.
Before LOTTINGER, ELLIS and CRAIN, JJ.
LOTTINGER, Judge.
Plaintiffs, Hartford Accident and Indemnity Company and Samuel E. Davis, sued Leander Finley for property damages resulting from an intersectional collision between a Volkswagen owned and driven by plaintiff, Samuel E. Davis, and a pickup truck owned and driven by defendant, Leander Finley. The Davis vehicle was damaged in the sum of $510.55, with Hartford Accident and Indemnity Company being subrogated to the rights of its insured, Davis, in the amount of $410.55 and Davis paid $100.00 as a deductible from the total costs of repairs. Defendant, Finley, reconvened' for property damages in the amount of $467.00 and personal injuries in the sum of $500.00.
The Lower Court rendered judgment in favor of plaintiffs as prayed for, taxed an expert witness fee as costs, and dismissed defendant's reconventional demand. Defendant appealed suspensively and/or, in the alternative, devolutively, from the judgment of the Lower Court.
The accident occurred in Baton Rouge at the intersection of North Street, Ninth Street, and an exit ramp from Interstate 10 or 110 which merges into the intersection of North and Ninth Streets in a westerly direction. The moment before the accident Samuel E. Davis was stopped at an electric semaphore light which was red for *832 him. His vehicle was headed south on Ninth Street. A moment before the accident, the defendant, according to his testimony, was proceeding west on North Street; however, plaintiffs allege that the defendant was getting onto North Street from the exit ramp coming down from Interstate 10 or 110. At this point we wish to quote a portion of the testimony of plaintiff, Samuel E. Davis, which explains where his attention was focused immediately prior to the accident.
"Q. You said you, you were stopped at this point right here?
A. Right.
Q. Your car was in neutral?
A. Right.
Q. Were you doing anything when your car, you were stopped and your car was in neutral?
A. I had, I had lit a cigarette and was watching the light.
Q. At the time you were proceeding across the intersection, were you lighting, were you lighting a cigarette at that time, sir?
A. No, sir, I had it lit.
Q. In other words, you, would this be a correct statement? You lit the cigarette; you're waiting for the light and then you shifted into neutral?
A. Right, I had lit my cigarette and I was watching waiting for the light to change colors, and when it did change to green I proceeded across."
We quote pertinent portions from the Reasons for Judgment of the Lower Court.
"I think that Mr. Davis had a green light. I think that Mr. Finley ran a red light."
"I don't think it's that important where Mr. Finley came fromwhether he was on the North Street, or coming down the ramp off the Interstate. I think in either event he faced a red light as opposed to a green light enjoyed by Mr. Davis, traveling south on North Ninth Street."
"He further testified that he did not see the other vehicle. Had he seen the other vehicle and had he observed that the vehicle was in trouble or not going to be able to stop, then he might be charged with being guilty of contributory negligence in that he had the last clear chance to avoid an accident. But as I recall his testimony it was clear that he did not see it."
A further factual consideration is the point of impact, and for this we go to the testimony of the investigating officer, namely, C. L. McLendon of the Baton Rouge City Police. He testified as follows:
"Q. From your investigation, sir, could you determine the point of impact the accident took place?
A. Yes, sir, It's approximately thirty-four feet south of the north parallel lines of North Street, six feet west of the east edge of the North Ninth Street."
The investigating officer further testified regarding the point of impact, as follows:
"Q. Would you describe the damage to the Davis vehicle, where it was damaged?
A. On the left side.
Q. And the damage to the Finley vehicle?
A. Was in the front."
The defendant believes that the Lower Court erred in a number of ways; however, the main issue is whether, plaintiff, Davis, was guilty of contributory negligence in relying on the green light and not paying more attention to the vehicle of the defendant.
*833 It is necessary to discuss the jurisprudence in point. The Supreme Court of this state has held that a motorist proceeding on a favorable traffic light is not required to look before entering an intersection, but may rely on the assumption that the other motorists will obey the traffic signal and stop. Youngblood v. Robison, 239 La. 338, 118 So.2d 431. The only exception is that the motorist with the signal in his favor may be found negligent where he could have avoided the accident by the exercise of the slightest degree of observation and care. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Ryan v. Allstate Insurance Company of Chicago, 232 La. 831, 95 So.2d 328; Steele, Individually and for Use and Benefit of Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919; Bourgeois v. Francois, 245 La. 875, 161 So.2d 750, and Rome v. S. D'Antoni, Inc., 246 So.2d 331 (La.App. 1st Cir., 1971).
If a motorist, entering an intersection properly on a green traffic light and proceeding lawfully through it, must do so at his peril, then traffic signals cease to be safety signals and become traffic traps. Indeed, it is now well settled that it is only in exceptional circumstances, where the motorists on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found derelict. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750; Bulliard v. Fortier Lincoln-Mercury Inc., 241 So.2d 31 (La.App. 3rd Cir. 1970); and Powell v. Allstate Insurance Company, 233 So.2d 38 (La.App. 2nd Cir., 1970). Under modern traffic conditions, a motorist must be allowed to assume that an electric semaphore signal will be obeyed by other motorists; all that is required is that the favored motorist maintain a general observation of the controlled intersection. Jordan v. Great American Insurance Company, 248 So.2d 363 (La.App. 4th Cir., 1971). A driver approaching an intersection with the green light in his favor is not obliged to turn his head in the direction of traffic approaching from his left or right. Moore v. Traders & General Insurance Company, 227 So.2d 174 (La.App. 2nd Cir., 1969; writ refused December 19, 1969). When an electric semaphore light turns green, a motorist crossing an intersection with the green light ceases to be obligated to observe traffic facing a red light and becomes obligated to observe traffic moving in the same or the opposing direction. Central National Insurance Co. of Omaha v. Bardsley, 256 So.2d 734 (La.App. 1st Cir., 1972).
The key words in the rule expressed by the Supreme Court in Bourgeois v. Francois, supra is, "where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care". Therefore, before we can find a motorist crossing an intersection with a green light derelict, we must necessarily find that he could have avoided the accident by the exercise of the slightest sort of observation and care and that in our opinion is a small or slight degree and not care of a high degree.
Defendant-appellant cites language from Martin v. Slocum, 147 So.2d 454 (La.App. 2nd Cir. 1962) which said that a plaintiff, who proceeded into an intersection either against a red light or as it turned green without allowing vehicle driven by one of defendant, who entered the intersection while the signal was yellow, sufficient time to clear the crossing, was guilty of negligence which was proximate cause of the accident. The important words in this holding of the court are "who entered the intersection while the signal was yellow, ..." This language is significant because a plaintiff who enters an intersection on a green or the beginning of a yellow light does so legally. In the case before us, the trial judge found that defendant-appellant was *834 faced with a red light. The physical evidence, that is, the point of impact, showed plaintiff to be thirty-four feet into the intersection before getting hit, and this strongly indicates that defendant-appellant entered the intersection after the light was red. We feel that any prior holding that a driver stopped at a red light that changes to green owes a duty to allow other vehicles crossing to clear the intersection before proceeding can apply only to vehicles legally in the intersection. It appears from the facts in this case that the defendant did not legally enter the intersection but entered on a red light as found by the Lower Court.
Since the record in the instant case does not show that the plaintiff could have avoided this accident by the slightest degree of care, we must conclude that the trial judge was correct in finding him free from fault.
For the reasons herein above assigned, the judgment of the Lower Court is affirmed, all costs of this appeal are to be paid by defendant-appellant.
Judgment affirmed.