STOULIG, Judge.
Plaintiffs, Daisy and Robert Carter, filed suit for damages allegedly incurred *528 by Mrs. Carter while she was a passenger on a bus owned by defendant transit company, New Orleans' Public Service Inc. It is alleged the driver slammed on the brakes of the moving bus as Mrs. Carter walked toward a seat, causing her to be thrown backward to the floor. As a result, she claimed, a dormant arthritic condition was activated to cause lumbar and cervical pain and disability that still persisted when this matter was tried. After a jury trial, a verdict (9 to 3) awarding $25,000 to Mrs. Carter for pain and suffering and $1,600 to Mr. Carter for special damages was made the judgment of the trial court. Defendants,[1] the transit company and the bus driver, have appealed first urging a reversal on the finding of liability and alternatively, seeking a reduction in quantum. Plaintiffs answered the appeal seeking an increase in damages.
The jury heard two versions of the facts —one from the bus driver and the second from a passenger — and no matter which account is the more credible, neither supports a finding that the bus driver was negligent.
It is not disputed the accident occurred at approximately 10:30 a. m. on June 25, 1971. Plaintiff boarded an eastbound bus at a transit stop on the Chef Menteur Highway near the intersection of Desire Street in the City of New Orleans. After she handed the driver a transfer fare, Mrs. Carter started down the aisle carrying a bag of groceries in one arm and a handbag and an umbrella on the other. During this interim the bus remained stopped in obedience to a red light. At some time as she walked toward a seat, the bus began moving forward and when it reached the center of the intersection the driver slammed on the brakes to avoid hitting a car that had suddenly driven across its path. Plaintiff was thrown backward to the floor, injuring her head, neck and back.
The controverted testimony deals with the movements of the car that created the emergency situation. First we shall examine the driver’s version. He testified that he was stopped in the right traffic lane of the highway and when the light changed to green, he moved forward on a straight course. When the bus was partially in the intersection, a vehicle identified only as a brown Chevrolet passed on his left in the adjoining traffic lane and then cut in front of the moving bus by executing a right turn maneuver into Desire Street. He immediately slammed on the brakes to avoid a collision.
If these are the facts, clearly the bus driver is not negligent. The operator of the brown Chevrolet created a sudden emergency in executing an illegal right turn in front of the moving bus, and its driver’s reaction in abruptly applying the brakes does not constitute negligence. Alphonse v. New Orleans Public Service, Inc., 138 So.2d 610 (La.App. 4th Cir. 1962).[2]
To rebut the driver’s testimony plaintiff called Leonard Williams, previously alluded to as the passenger. He testified he had a clear view of the intersection when the accident occurred since he occupied the last seat on the left side of an almost empty bus. While his testimony lacks clarity in some instances due to the witness’ apparent limitation in expressing himself (he impresses us as being honest), what emerges clearly is that he saw (1) the driver start his bus only after the traffic signal had changed to green in his favor; (2) the driver of the car executed a turning maneuver 'from some point in the op *529 posite lanes and proceeded directly in front of the bus into Desire Street; (3) when the driver of the unidentified vehicle entered the intersection, he did so in violation of a red light; and (4) had the bus driver not slammed on the brakes he would have hit the turning vehicle.
In the light of this testimony, we think the evidence adduced from plaintiffs’ own witness absolves the driver from negligence. The rule of negligence applicable to this situation was stated in Bourgeois v. Francois, 245 La. 875, 883, 161 So.2d 750, 753 (1964), as follows:
“The Court of Appeal, citing two of its own cases and Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, acknowledged that the rule is established in this State that a motorist travelling on a favored street, and, a fortiori, on a street controlled by electric semaphore lights, is entitled to assume that drivers on the less favored street, and particularly traffic facing a red light, will obey the law and respect his right-of-way. Indeed, it is now well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found derelict. * * * »
This holding was quoted with approval in American Home Assurance Company v. Czarniecki, 255 La. 251, 255, 230 So.2d 253, 256 (1969). We interpret these cases to hold that the presence of the green signal imposes on the favored motorist the duty only to maintain a slight observation.
To support their assertion the bus driver was negligent in failing to let traffic clear the intersection before proceeding, plaintiffs cite Martin v. Slocum, 147 So.2d 454, 455 (La.App. 2d Cir. 1962), which ruled:
“ * * * The law is well settled that where traffic is controlled by an electric semaphore light a motorist is guilty of negligence if he proceeds into an intersection after a red light turns to green without allowing sufficient time for those in the intersection to clear same * * ”
For this rule to apply, the other vehicle must have entered the intersection legally. This same argument was considered and rejected in Hartford Accident & Indemnity Company v. Finley, 282 So.2d 830 (La.App. 1st Cir. 1973). The court reasoned:
“Defendant-appellant cites language from Martin v. Slocum, 147 So.2d 454 (La.App. 2nd Cir. 1962) which said that a plaintiff, who proceeded into an intersection either against a red light or as it turned green without allowing vehicle driven by one of defendant, who entered the intersection while the signal was yellow, sufficient time to clear the crossing, was guilty of negligence which was proximate cause of the accident. The important words in this holding of the court are ‘who entered the intersection while the signal was yellow, . . .’ This language is significant because a plaintiff who enters an intersection on a green or the beginning of a yellow light does so legally. In the case before us, the trial judge found that defendant-appellant was faced with a red light. The physical evidence, that is, the point of impact, showed plaintiff to be thirty-four feet into the intersection before getting hit, and this strongly indicates that defendant-appellant entered the intersection after the light was red. We feel that any prior holding that a driver stopped at a red light that changes to green owes a duty to allow other vehicles crossing to clear the intersection 'before proceeding can apply only to vehicles legally in the intersection. It appears from the facts in this case that the defendant did not legally enter the intersection but entered on a red light as found by the Lower Court.” 282 So.2d at 833-834.
The fact that defendant is a common carrier does not alter the effect of this jurisprudence. Defendant’s status merely obli *530 gates it to exculpate itself of any negligence however slight that would have contributed toward the injury of plaintiff.
Thus under the Williams version and the cited jurisprudence, the driver of the bus was not negligent. Through the testimony of plaintiffs’ witness the common carrier is exculpated from negligence. Williams is positive the bus had a green light, and while it may be true, as plaintiffs argue, that Williams could not see the red light he claims to have seen for the car, we do not think it is necessary to speculate on this possibility, for in the absence of any evidence to the contrary it stands to reason that a green light for the bus driver necessitates an unfavorable light for the car.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiffs’ suit be dismissed. All costs are to be borne by plaintiffs.
Reversed.

. Originally Continental Insurance Co., New York, New York, was made a party defendant as the liability insurer of New Orleans Public Service Inc. However, plaintiffs later-discontinued their suit against this defendant when they learned that New Orleans Public Service Inc. was self-insured.

. We are aware of the recent decision of this court, Payton v. New Orleans Public Service, Inc., 285 So.2d 344 (1973). However, it is distinguishable from the instant matter. In Payton the driver was found guilty of negligence in operating the bus in violation of a municipal traffic ordinance which efficiently contributed toward the occurrence of the accident. No such violation occurred in the subject case.