CUTRER, Judge.
Plaintiffs, Donald W. White, individually and as administrator of the estates of his three minor children, Shannon White, Donald W. White, Jr. and Billy White, and Lonell B. White, his wife, claim damages for personal injuries and automobile damages sustained as the result of a vehicular *598 collision allegedly caused by the negligence of defendant’s insured. The defendant, State Farm Mutual Automobile Insurance Company, filed an answer, reconventional demand against plaintiffs and a third party demand against the City of Eunice. Following a trial on the merits, the trial judge rendered a judgment dismissing the recon-ventional and third party demands of defendant. In addition, he dismissed the demands of Mr. White, individually, and Mrs. White on a finding of contributory negligence. The judgment awarded damages to Mr. White on behalf of two of the three minor children. We affirm the judgment with respect to the awards to Mr. White as administrator and reverse and render judgment with respect to the claims of Mr. White, individually, and Mrs. White. The defendant has neither appealed nor answered the appeal so the dismissal of the reconventional and third party demands are not before us.
The collision which is the subject of this suit took place about 3:15 P. M. on August 1, 1972, in Eunice at the intersection of Nile Street and Moosa Boulevard. Lonell B. White, one of the plaintiffs, was driving her husband’s 1970 Mercury sedan in a westerly direction on Nile Street crossing its intersection with Moosa Boulevard. She had almost completed the crossing maneuver when her car was struck in the right side by the left front of a 1965 Ford owned by Louis E. Norris, insured by State Farm Mutual Automobile Insurance Company and being driven by the owner’s 16 year old daughter, Mary K. Norris. The White vehicle was crossing the intersection at a 45 degree angle from northeast to southwest. The Norris vehicle was traveling south on Moosa. There is a stop sign facing east on Nile Street directing all traffic approaching Moosa on Nile from the east to stop. After stopping at that point and then entering the intersection vehicles crossing Moosa Boulevard have the right-of-way to traverse the western, or southbound, half of Moosa due to the existence of a yield sign facing southbound traffic on Moosa.
The record indicates that Mrs. White was proceeding west on Nile Street and came to a complete stop when she came to the stop sign at the intersection of Nile and Moosa Boulevard. Then she proceeded to cross the boulevard at a speed of 10 miles per hour. She had traversed the northbound lanes of Moosa and had almost completed traversing the southbound lanes of the boulevard when her vehicle was struck by the Norris vehicle, a distance of 103 feet from the stop sign to the point of impact. According to the testimony of Mrs. White, she was not concerned with traffic coming from the north on Moosa because the curve in the intersection required her to watch for oncoming traffic and because she was aware that she had the right-of-way to traverse the southbound lanes of the boulevard.
The testimony of Miss Norris indicates that she and a friend had been at Moosa Memorial Hospital just prior to the accident and that they were leaving the hospital parking area and proceeding south on Moosa Boulevard when the accident occurred. Miss Norris stated that she had traveled through the same intersection on earlier occasions but was unaware of the yield sign located at the intersection which required her to yield the right-of-way to vehicles in the intersection moving from east to west on Nile Street. In addition, she stated that cars were parked on the neutral ground between the northbound and southbound lanes of Moosa Boulevard just to the north of the intersection and that the position of these vehicles blocked her view to the east, the direction from which Mrs. White was coming at the time of the accident. She was traveling about twenty-five miles per hour just prior to the collision and she stated in her testimony that she did not slow her vehicle as she approached the intersection, even though her view of the area to the east was *599 blocked by the parked cars.[1] Her driving experience was somewhat limited in that she had been licensed to drive for slightly more than fourteen months.
The testimony of Melinda Ryder, the passenger in defendant’s vehicle, is of little assistance in connection with the determination of liability. According to her testimony, she was looking through her purse at the time of the accident. She looked up only a fraction of a second before the collision to see the plaintiff’s vehicle in the intersection. Her testimony also indicated that vehicles were parked in the neutral ground of the boulevard. But she was not able to state whether the positioning of those vehicles blocked the view of the area from which Mrs. White was traveling.
Willard Matt, a member of the Eunice Police Department at the time of the accident, investigated the accident. He stated at trial that it had been raining the afternoon of the accident but that it was not raining when the accident occurred. The road surface was asphalt and it was still wet when he arrived on the scene a short time after the accident. The White vehicle was located in the ditch on the southwest corner of Nile Street. He made no estimate of speed for either vehicle but relied on the statements of the drivers, that plaintiff was traveling ten miles per hour and defendant was traveling twenty-five miles per hour. No skid marks were visible on the road surface. He testified that the speed limit for both vehicles was twenty-five miles per hour.
In his written reasons for judgment the trial judge found that Miss Norris was negligent. We find that the record fully supports this conclusion. She was required by the yield sign to yield the right-of-way to all vehicles in the intersection. It is impossible for Miss Norris to have reached the intersection prior to Mrs. White when she was traveling more than twice the speed of the White vehicle and •hit that vehicle when it had almost completely traversed the intersection. In addition, Miss Norris was negligent in failing to slow her vehicle before entering the intersection when her vision was blocked, according to her own testimony, in such a way as to prevent her from seeing vehicles moving from east to west across the intersection on Nile Street. However, the trial judge also concluded that Mrs. White was contributorily negligent in failing to see the Norris vehicle traveling south on Moosa Boulevard. We cannot agree with this conclusion.
A certified copy of an ordinance of the City of Eunice was introduced into evidence by plaintiffs which provides, in part, as follows:
******
“SECTION 1: That the intersection of Moosa Blvd. and Nile Street within the corporate limits of the City of Eunice is designated a dangerous intersection and that southbound traffic on Moosa Blvd. will henceforth yield to traffic in the intersection.
“SECTION 2: That all vehicles approaching said intersection from Nile Street will come to a complete halt before entering the intersection, but that all vehicles going south on Moosa Blvd. shall yield the right-of-way to all vehicles having first entered said intersection.”
******
In effect, this ordinance gives “favored street” status to vehicles in the position of the White, vehicle in the present case.
The jurisprudence of this state is to the effect that a motorist traveling on a favored street is entitled to assume that drivers on the less favored street will obey the law and respect his right-of-way. It is *600 well settled that it is only in exceptional circumstances, where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, that he will be found negligent. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964). The favored driver can assume respect of his right-of-way on the part of other drivers until he sees or should see that another driver has not observed or is not going to observe the law. Richard v. Southern Farm Bureati Casualty Insurance Co., 212 So.2d 471 (La.App. 3rd Cir. 1968).
The point of impact in the southbound lanes of Moosa Boulevard combined with the fact that Miss Norris was traveling more than twice the speed of Mrs. White leads to the conclusion that Mrs. White was in the intersection prior to Miss Norris reaching the point where the yield sign ■required her to yield the right-of-way to Mrs. White. Mrs. White was familiar with the intersection and with the fact that vehicles traveling south on Moosa Boulevard are required to yield the right-of-way to her. She was on the favored street and entitled to assume that drivers moving in the direction of Miss Norris would yield the right-of-way to her. The evidence produced at trial does not indicate that she saw or should have seen that Miss Norris was not going to yield the right-of-way to her. For these reasons we find no contributory negligence on the part of Mrs. White.
As to the issue of damages, Mr. White, individually, sought damages in the amount of $1,274.80 for the loss of the family automobile and $600 for the loss of the use of that automobile. In addition, he sought as administrator of the estates of his three minor children damages in the amount of $2,000 for each child. Mrs. White sought damages in the total amount of $35,000, alleging whiplash injuries, lower back injuries, and head and shoulder injuries.
Mrs. White’s testimony indicates that she felt some soreness in the neck and had a headache in the evening following the accident. The following morning she could not move her head without severe pain. She saw Dr. Samuel Stagg, Jr., of Eunice, and was given some muscle relaxants and pain pills. She saw Dr. Stagg on four other occasions during the next four months in connection with pain in her neck. She stated that Dr. Stagg referred her to Dr. Lionel Mayer, of the Opelousas Orthopedic Clinic, for consultation in connection with her injuries. She was only able to do light housework and required the assistance of her husband and oldest child to do other housework during the four months following the accident. This testimony was corroborated by that of her husband.
Dr. Stagg testified at the trial and his testimony indicated that Mrs. White had suffered a cervical sprain. This diagnosis was confirmed by X-ray examination performed at Moosa Memorial Hospital on September 5, 1972. After continued complaints of pain from Mrs. White, which Dr. Stagg indicated to be typical in cases involving this type of injury, he referred her to Dr. Mayer. Dr. Mayer’s report to Dr. Stagg was introduced into evidence. It indicates that he found no evidence of any nerve root compression of the upper extremities. He noted that injuries of this type take several weeks to several months for the body’s healing processes to work, and that it is not unusual for patients to continue with some pain and discomfort in the area for several months.
We believe that the above evidence justifies an award in favor of Mrs. White for her pain and suffering in the amount of $3,000. In addition, a bill from Dr. Stagg in the amount of $100, from Opelousas Orthopedic Clinic in the amount of $85 and from Derbes Drug Store in the amount of $21.77, were introduced into the record and proved to have been incurred in connection with treatment of the injuries sustained by Mrs. White in the accident. These special damages should be recovered as well.
*601 As noted above, Mr. White sought damages in the amount of $2,000 for each of the three children. The children, Shannon, Donald, Jr., and Billy, were with their mother when the accident occurred. None was seriously injured. Shannon received some scratches from flying glass and a few bruises. She was treated primarily by her mother, and the trial judge awarded $50 in connection with ' these complaints. Billy became hysterical right after the accident and vomited. He was also bruised and had to be treated by a physician. The trial judge awarded $250 in connection with these complaints. We find no abuse of discretion on the part of the trial judge in the amounts awarded for these complaints. No award was made in connection with Donald, Jr.’s complaints because he suffered no compensable damages.
Mr. White alleged the loss of the family automobile as a result of the accident. In addition, he alleged that damages in the amount of $600 were due as a result of the loss of use of the family automobile. At the trial it was stipulated that the collision coverage afforded under plaintiff’s own insurance policy covered the loss of the family automobile and that plaintiff’s right of recovery for the loss of the vehicle was limited to the $100 deductible he was required to pay under the policy provisions. Proof of the amount plaintiff was required to pay to rent a vehicle for use until the damaged family automobile could be replaced was made by submitting into evidence a bill in the amount of $198.45 from Gilbert Chevrolet, Inc., of Eunice. These expenses have been proved and plaintiff should recover them.
Other expenses for drugs, X-ray examination, wrecker service and the children’s physical examinations were testified to by Mrs. White but were not corroborated by supporting evidence; therefore, there can be no recovery for those items of damage.
For the reasons assigned, the judgment of the trial court in connection with the awards for damages sustained by Shannon White and Donald White, Jr., is affirmed. The judgment dismissing the actions of Mr. White and Mrs. White is reversed, and it is hereby ordered, adjudged and decreed that there be judgment herein in favor of Lonell B. White and against defendant, State Farm Mutual Automobile Insurance Company, in the full sum of three thousand and no/100 ($3,000.00) dollars, together with legal interest thereon from date of judicial demand until paid; it is further ordered, adjudged and decreed that there be judgment herein in favor of Donald W. White, individually, and against defendant, State Farm Mutual Automobile Insurance Company, in the full sum of five hundred five and 22/100 ($505.22) dollars, together with legal interest thereon from date of judicial demand until paid; it is further ordered, adjudged and decreed that defendant-appellee pay all costs.
Affirmed in part; reversed and rendered in part.

. The distance traveled by defendant from the yield sign to the point of impact was 72 feet.