**W. S. SHAMBAN AND COMPANY, a corporation, Appellee,**

v.

**COMMERCE AND INDUSTRY INSUR-ANCE COMPANY, a corporation, and Does I through V, Appellant.**

**No. 26863.**

United States Court of Appeals, Ninth Circuit.

March 12, 1973.

Rehearing Denied May, 14, 1973.

---

David C. Bogert (argued), Richard B. Wolf, of Long & Levit, Los Angeles, Cal., for appellant.

Herbert N. Wolfe (argued), of Low & Stone, Beverly Hills, Cal., for appellee.

Before BARNES and WALLACE, Circuit Judges, and ENRIGHT,* District Judge.

PER CURIAM:

This appeal resulted from an action brought by W. S. Shamban and Company against its insurance carrier for breach of the insurance provisions in which the insurance carrier, Commerce and Industry Insurance Company, failed to pay to its insured amounts due under a business interruption policy in force during a fire at the Fort Wayne, Indiana, plant of plaintiff.

On April 12, 1967, a fire at plaintiff's plant damaged one production oven and temperature control mechanism of the oven, together with machinery used for processing metal parts. In addition, a recently installed device known as a "Gatlin Gun Sintering Rack," used in a revolutionary method for producing "core molded" tubes was destroyed.

At the time of the loss there was in effect a policy of insurance between plaintiff, as insured, and defendant, as insurer, under which defendant agreed to indemnify plaintiff for business interruption loss caused by such a fire. More specifically, the policy insured plaintiff against:

"direct loss of earnings on operations which, had they not been prevented would have taken place during . . . the length of time which would have been required with the exercise of due diligence and dispatch to repair, rebuild or replace such of the described property as has been damaged."

The policy defined "loss of earnings" as:

"the loss to the insured disclosed by comparing actual income and expense . . . for whatever period is affected with estimated income and expense for the same period assuming there had been no loss."

Plaintiff was awarded judgment in the sum of $121,000 by the trial court.

Appellant before this court contends the lower court improperly computed appellee's losses for two reasons. First, defendant maintains that in making Finding of Fact Number 6, the trial court improperly relied upon an unrepresentative prior year's increase in estimating lost sales for the period of business interruption (suspension period). Secondly, defendant argues that in Finding of Fact Number 6(c), the lower court erred in impliedly determining that plaintiff would have earned 27.58% more sales revenue during the suspension period without incurring any additional labor costs.

The lower court determined that the suspension period was three and one-half months. Following the formula required in the insurance contract, the court projected sales revenue for this period using Shamban Company's sales performance record as a gauge. Specifically, the court used the rate of growth of sales reflected in the 12 months immediately preceding the suspension period. This figure was 27.58%.

* The Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

Appellant insurance company objects to this figure as being unrepresentative of the company's growth record. Appellant aptly points to the growth rate in the year ending March 31, 1966, being 15.79%, and in the year ending March 31, 1965, being 15.79%. Thus, defendant argues, 1967 was an exceptional year which should not be exclusively used.

On the other hand, defendant offers little persuasive evidence that such a growth rate would not continue, at least over the short run. It should be remembered that the base year elected by the trial judge was the 12 month period immediately preceding the fire and ensuing suspension period.

■ Accordingly, we find that the trial court's findings on this issue are supported by the evidence, and we concur in those findings. Rule 52(a) Federal Rules Civil Procedure, 28 U.S.C.A.; Ruud v. American Packing & Provision Company, 177 F.2d 538 (9th Cir. 1949).

■ Defendant, on appeal, also contends that the lower court erred finding that plaintiff would have earned 27.58% more sales revenue during the three and one-half month suspension period without incurring any additional labor cost. Defendant's argument that this finding is not supported by the evidence is well taken.

Both parties agree that plaintiff is entitled to be reimbursed only for the difference between projected sales revenue and projected cost of goods sold. In this case the trial judge apparently found there would be no concomitant rise in labor cost with a 27.58% rise in sales. Plaintiff contends this result is supported by evidence of record that the new Gatling Gun process greatly increases productivity.

We cannot agree. As defendant points out, the Gatling Gun process is only one stage of production. In fact, the Gatling Gun stage requires only ten persons, whereas the machining stage requires 80 persons, and the finishing stage requires 25 persons. In the absence of contrary evidence, it is logical to project a rise in labor costs in the machining stage and the finishing stage production even if the Gatling Gun stage could effect increased output with no extra labor costs. In fact, the evidence did reveal that some departments at the plant were already working overtime prior to the fire.

Evidence adduced at trial indicated that direct cost of goods sold including labor costs was about 50% of sales revenue for the previous 12 months. The trial court in its Finding of Fact Number 6(c), however, determined that the sum of the continuing costs and expenses which would have attended plaintiff's lost sales equalled only 35% of the revenue from such sales.

■ We recognize that we must view the record in the light most favorable to sustain the lower court's judgment for plaintiff, and Finding of Fact 6(c) of the District Court must be sustained unless "clearly erroneous." Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A.; County of Ventura v. Blackburn, 362 F.2d 515 (9th Cir. 1966).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Company, 333 U.S. 364 at 395, 68 S.Ct. 525 at 542, 92 L.Ed. 746 (1948).

■ Appellant contends that the standard of review stated in Rule 52(a) has a diminished function in a case such as this, where the lower court's fact-finding is based on interpreting data with the aid of expert witnesses rather than judging the credibility of witnesses. Citing the view expressed by the late Judge Frank in Orvis v. Higgins, 180 F.2d 537, 539 (2nd Cir. 1950), appellant urges this court to disregard the trial court's findings. See also Pacific Vegetable Oil Corp. v. Commissioner of Internal Revenue, 251 F.2d 682 (9th Cir. 1957), Pacific Portland Cement Co. v. Food Machinery & Chem. Corp., 178 F.2d

541 (9th Cir. 1949). The late Judge Clark who drafted Rule 52(a) seemed, however, to be of the opinion that the "clearly erroneous" test should be applied on review even in a case not involving the credibility of witnesses. This court in Lundgren v. Freeman, 307 F.2d 104, 113 (9th Cir. 1962) addressed itself to this question and observed, "It seems to us that the Clark view is favored by history." We have adhered to this position subsequently. United States v. Ironworkers Local 86, 443 F.2d 544, 549 (9th Cir. 1971). We, therefore, decline to review the evidence *de novo* and substitute our judgment for that of the trial judge.

After reviewing the record, we are left with the definite and firm conviction that the trial court made a mistake in finding that there would be absolutely no increase in cost, in spite of a 27.58% increase in sales. The trial court should reconsider the evidence on costs and make a new finding in relationship thereto.

Affirmed in part and reversed in part.