530 So.2d 1170 (1988)
Myrtis Hernandez CASCIO & Joe Cascio, Jr., Plaintiffs/Appellants,
v.
The CITY OF MONROE & Harold D. Arrant, Defendants/Appellees.
No. 19652-CA.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1988.
*1171 Jones & Johnson by Jerry L. Jones, Monroe, for plaintiffs/appellants.
Carl Van Sharp, Asst. City Atty., Monroe, for defendants/appellees.
Before HALL, JASPER E. JONES and NORRIS, JJ.
HALL, Chief Judge.
This is a personal injury action arising from an intersectional collision between an automobile and a City of Monroe firetruck. The plaintiffs are Myrtis Hernandez Cascio, the driver of the automobile; and her former husband, Joe Cascio, Jr. The defendants are Harold Arrant, the driver of the firetruck; and his employer, the City of Monroe.
Following trial on the merits, the district judge found that the accident was caused by the concurrent negligence of Mrs. Cascio and Mr. Arrant. The trial judge awarded Mrs. Cascio special damages for medical expenses in the amount of $8,256.25, lost wages in the amount of $3,652.00 and general damages of $33,000.00 for pain and suffering and mental anguish. No award was made for permanent disability. Mr. Cascio was awarded $1,500.00 for loss of consortium.
Applying principles of comparative fault, the trial judge found Mrs. Cascio to be 40% at fault and reduced both her award and Mr. Cascio's award accordingly. Judgment was rendered in favor of Mrs. Cascio and against Mr. Arrant and the City of Monroe, in solido, for a total amount of $26,944.95, and in favor of Mr. Cascio for a total amount of $900. Costs of the proceeding were taxed equally between plaintiffs and defendants.
Mrs. Cascio appeals the trial court's assessment of fault and the amount of general damages awarded. Mr. Cascio appeals also and assigns as error the reduction of his loss of consortium award by the percentage of Mrs. Cascio's negligence. Additionally, both plaintiffs complain of the assessment of court costs against them.
Finding that the trial court was correct in finding Mrs. Cascio at fault but that its assessment of 40% of the fault of the accident *1172 to Mrs. Cascio was excessive, we amend that part of the trial court judgment to reduce the comparative fault of Mrs. Cascio to 20%. We affirm the trial court's quantum determinations, and will amend the judgment to reflect the reduced percentage of fault attributable to Mrs. Cascio. We also amend the judgment to assess costs to the defendants.
The Facts
The accident occurred shortly after 7:00 a.m. on September 23, 1985 at the intersection of Louisville Avenue and Sixth Street in Monroe, Louisiana. Mrs. Cascio was driving her Pontiac Sunbird east on Louisville and entered the intersection pursuant to a green light. Mr. Arrant was driving the firetruck north on Sixth Street, enroute to a fire with lights flashing and siren blowing, and entered the intersection against a red light.
Mrs. Cascio testified that she had her windows up and the radio on in her car and did not hear the siren. She also testified that she did not see the firetruck until it was too late to stop. Louisville Avenue has four lanes, two eastbound and two westbound. Mrs. Cascio was initially driving in the inside eastbound lane but changed to the outside lane as she approached the intersection. She testified that she changed lanes because the inside lane was obstructed by a stopped car which she believed was stalled. There were also cars stopped in the westbound lanes of Louisville at the intersection but there was no evidence that Mrs. Cascio observed these other cars. Mrs. Cascio testified that she was traveling at about 30 m.p.h. when she entered the intersection.
Sixth Street is a one-way street that has four lanes at its intersection with Louisville. The two outside lanes are turn lanes. A pickup truck was stopped in the western outside turn lane at the intersection and the firetruck was in an inside lane proceeding across Louisville when the accident occurred. Mr. Arrant testified that he was traveling about 30-35 m.p.h. down Sixth Street but slowed to about 15-20 m.p.h. as he approached the intersection. Looking to the left, Mr. Arrant saw the vehicle stopped in the inside eastbound lane of Louisville. Looking to the right, he observed that the westbound traffic had stopped. He then accelerated and proceeded through the intersection. He testified that he did not see Mrs. Cascio's vehicle prior to the collision, which occurred in the southeast quadrant of the intersection when the front end of Mrs. Cascio's car struck the side of the firetruck just behind the front wheel.
Trial Court Opinion
The trial court found that both Mrs. Cascio and Mr. Arrant were at fault in causing the accident. With regard to Mr. Arrant's fault, the trial court found that because of his elevated position there were no impediments to his vision and that had he looked back to his left before entering the intersection he would have seen Mrs. Cascio. The court pointed out that Mr. Arrant was a trained, professional fireman and that as such he was certainly aware of the danger of his conduct in entering an intersection on a red traffic signal and that there was great risk involved in his conduct. The court found that although there were extenuating circumstances requiring Mr. Arrant to proceed with haste, he entered the intersection without due regard for the safety of others. The trial court assigned 60% of the fault of the accident to Mr. Arrant and his employer, the City of Monroe.
Regarding Mrs. Cascio's fault, the court stated that a green light did not give Mrs. Cascio a "carte blanche right" to cross the intersection and pointed out that she had a duty to yield the right-of-way when the firetruck approached the intersection using its audible and visible emergency signals. The court found that as Mrs. Cascio approached the intersection in the inside lane and made the decision to turn right into the outside lane, her attention was momentarily diverted to looking to her rear to see if she could move into the outside lane safely. The court reasoned that Mrs. Cascio's impatience led to her not properly ascertaining the reason the vehicle in front of her had stopped and found that there were no extenuating circumstances requiring her to *1173 proceed in haste. The court stated that evidently she was very near the intersection when she changed into the outside lane and that had she been some distance away when she changed lanes, Mr. Arrant would have observed her presence. The court also stated that the fact that Mrs. Cascio's radio was on was an "obvious distraction" to her driving and prevented her from hearing the firetruck. The trial court found that the firetruck was within Mrs. Cascio's range of vision and that she was at fault for failing to see it until just before impact. The court concluded that although Mrs. Cascio's conduct was the result of inadvertence it created a high degree of risk and assigned 40% of the fault of the accident to Mrs. Cascio.
Contention of the Parties
On appeal, Mrs. Cascio contends that the trial court erred in finding 40% comparative negligence on her part. She asserts that her ability to hear the firetruck's siren was impaired because her windows were up and her radio was on. She argues that she could not yield to an audible signal which she could not hear. She also argues that the trial court erred in finding that the firetruck was within her range of vision and suggests that her view of Sixth Street may have been blocked by vehicles parked at Shipley's Donut Shop which was located at the southeast corner of the intersection. Plaintiff also argues that switching lanes is a legal traffic maneuver and that she not be faulted for doing so immediately prior to entering the intersection. Finally plaintiff contends that the accident was unavoidable even with the exercise of extreme caution and that she was not at fault in any way.
Assessment of Fault
Louisiana Revised Statutes 32:24 prescribes the privileges and duties of an emergency vehicle as follows:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions hereinstated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operations;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
The degree of care required of motorists upon the approach of an emergency vehicle, is set forth in Louisiana Revised Statutes 32:125 which states:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with *1174 due regard for the safety of all persons using the highway.
Mr. Arrant's negligence was the initial precipitating cause of the accident and as such his fault was substantially greater than plaintiff's. Entering the intersection against a red light created a high degree of risk. Mr. Arrant should have foreseen that vehicles favored with the green light would be crossing the Louisville intersection and he should have proceeded with extreme caution. His view of the intersection was unimpaired. Mrs. Cascio's car was there to be seen and Mr. Arrant had a duty to ascertain that all traffic favored with a green light was yielding to his emergency vehicle. Weber v. State Farm Mutual Automobile Insurance Company, 347 So.2d 336 (La.App. 4th Cir.1977). His failure to do so was the predominant cause of this accident.
After a careful review of the evidence, we find that the trial court correctly determined that Mrs. Cascio was also at fault but that its assessment of 40% of the fault of the accident to Mrs. Cascio was excessive. The evidence indicates that Mrs. Cascio was traveling within the posted speed limit as she approached the intersection and that she was favored with a green light. As the favored motorist she was not obligated to look to the left or right before entering the intersection but she was required to maintain a general observation of the intersection. The favored motorist in this situation is held accountable only if the accident could have been avoided with the exercise of the slightest degree of care. Jones v. Winston, 437 So.2d 889 (La.App. 2d Cir.1983). Despite the abovementioned factors in Mrs. Cascio's favor, we conclude that she did not exercise ordinary caution or attentiveness as she approached and entered the intersection. The fact that all the other drivers on Louisville except Mrs. Cascio stopped their vehicles at the intersection, apparently in anticipation of the firetruck's imminent arrival, indicates that Mrs. Cascio was, at the very least, inattentive. If Mrs. Cascio had made a general observation of the intersection she would have seen the stopped traffic and would have been alerted to the possibility that the intersection was not clear. Additionally, a prudent driver would have slowed down and exercised caution upon encountering a "stalled" vehicle. Instead of acting prudently, Mrs. Cascio changed lanes and accelerated into the intersection. This maneuver required her to turn her attention away from the intersection to look in the rear view mirror. The slightest caution, slowing down and looking to her right before entering the intersection, would have revealed the oncoming firetruck, and she could have avoided the accident. We note that no testimony was offered to establish that there were in fact cars parked in the Shipley Donut parking lot on the morning of the accident which obstructed her view of the intersection.
Plaintiff's fault was inadvertent and except for failure to exercise caution after observing the stopped cars, consisted of actions that ordinarily would have presented no risk. Aided by the trial court's thoughtful analysis of the Watson v. State Farm Fire & Casualty Insurance Company, 469 So.2d 967 (La.1985), factors in apportioning fault, we find plaintiff's comparative fault to be 20% rather than 40% and amend the judgment to increase the awards to her and her former husband accordingly.
General Damages
Mrs. Cascio contends that the trial court abused its discretion in failing to award her sufficient general damages.
Before a general damage award can be altered on appeal, the record must show a clear abuse of the trial court's much discretion. The initial inquiry must always be directed at the particular injuries and their effects on a particular injured person. It is only after an articulated analysis of the facts discloses an abuse of discretion that the award may on appellate review, for articulated reasons, be considered either excessive or insufficient. Only after such determination of abuse has been reached is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award for the present case. Reck v. Stevens, 373 So.2d 498 (La. 1979).
*1175 Mrs. Cascio sustained serious injuries in the accident including a broken wrist, a fractured kneecap, loss of a tooth, and multiple large bruises. She was taken in an ambulance to a hospital where she remained for four days. Her broken wrist was set by reduction by manipulation and a cast. Her fractured right kneecap was treated by use of a knee splint. She saw the doctor several times and received physical therapy treatment for her injuries. She was found to have sustained chondromalacia to both knees but her doctor stated in most cases these problems were not severe, particularly where the patient would avoid activities that created excessive use of the knees. He found no functional disability in the wrist due to the fracture.
Mrs. Cascio's doctor released her to return to work on February 24, 1986 but because of continued pain in her lower extremities Mrs. Cascio did not feel that she could return to her job as a stock person at K-Mart. Mrs. Cascio had been employed at K-Mart since June 13, 1984. At the time of the accident she was making $4.15 per hour and worked 40 hours per week. Both Mrs. Cascio and her husband testified that the financial pressure created by the loss of Mrs. Cascio's K-Mart salary was a significant factor in the subsequent dissolution of their marriage.
After a careful review of the evidence we find that the amount awarded by the trial judge was adequate to compensate Mrs. Cascio for the injuries she sustained and were not so low as to amount to an abuse of his much discretion.
Loss of Consortium
Mr. Cascio assigns as error the trial court's reduction of his loss of consortium award by the percentage of negligence attributed to his former wife. This contention is without merit. See Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986). Furthermore, our review of the record indicates that the trial court award to Mr. Cascio of $1,500.00 for the loss of his wife's consortium, service, and society as a result of her injuries was not so low as to constitute an abuse of discretion.
Decree
For the reasons stated herein, the judgment is amended to increase the judgment in favor of Mrs. Cascio to $35,926.60 and the judgment in favor of Mr. Cascio to $1,200.00. The judgment is also amended to provide that the costs of this appeal and of proceedings in the trial court are to be borne by defendants. Otherwise, the judgment is affirmed.
AMENDED, AND AS AMENDED AFFIRMED.