578 So.2d 232 (1991)
Jean F. HORN, Plaintiff-Appellant,
v.
CITY OF LAFAYETTE, et al., Defendants-Appellees.
No. 89-1082.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1991.
Rehearings Denied May 14, 1991.
*233 David M. Kaufman, Lafayette, for plaintiff-appellant.
Landry, Watkins & Bonin, Edward P. Landry, New Iberia, for intervenor-appellant.
Domengeaux & Wright, Robert K. Tracy, Lafayette, for intervenor-appellee (Liberty Mutual Ins. Co.).
Brinkhaus, Dauzat & Falgoust, Jerry J. Falgoust, Opelousas, for defendant-appellee.
Voorhies & Labbe, Thomas R. Hightower, Jr., Lafayette, for defendant-appellee.
Before GUIDRY, FORET and YELVERTON, JJ.
FORET, Judge.
The issues involved in this case are liability and quantum arising out of a two-vehicle collision occurring on January 31, 1985 between Jean Horn, a cab driver employed by Thrifty Cab, and Robert Layburn, a police officer employed by the City of Lafayette, defendant-appellee herein. The trial court found that the sole cause of the accident was the gross negligence of Horn, plaintiff-appellant, and awarded no damages. Both Horn and Liberty Mutual Insurance Company[1] appeal the trial court judgment, contending that the negligence of Robert Layburn was the sole cause of the accident and thus, the judgment of the trial court should be reversed.
From our review of the record, we agree with appellant's contention and find the trial court judgment clearly in error and reverse accordingly.

LIABILITY
There is little dispute as to the circumstances surrounding the accident. On January 31, 1985, Horn, a cab driver, was traveling south on St. Antoine Street. When she was approximately three car lengths from the intersection, the light in her direction turned green. She looked to her right and saw no cars approaching. She looked to her left, but her view was obstructed by an L-shaped building and a parked car on the northeast corner of the intersection. She removed her foot from the accelerator and proceeded into the intersection on a green light. The collision occurred in her lane of traffic, damaging the left front fender of the vehicle she was driving.
Officer Layburn was traveling west on West Simcoe Street approaching a yellow light. He was responding to an emergency call.[2]
The emergency blue lights were flashing and the siren was engaged.[3] The light facing him turned red as he approached the intersection. He looked to the left and noted a vehicle was stopped. Looking in Horn's direction, his view was partially obscured by the L-shaped building and parked *234 car on the northeast corner of the intersection. He nevertheless proceeded into the intersection on a red light. The collision occurred, damaging the police unit's right front passenger door.
The testimony of two eyewitnesses to the accident, Rodney and Alvin Tyler, was presented at trial. Essentially, their version of the accident does not significantly differ from that of the plaintiff or the investigating officer, Officer Michael J. Prim. It appears that neither vehicle left skid marks nor had time to apply their brakes prior to impact. The response, if any, of the parties was limited to swerving away from each other.

LAW
La.R.S. 32:24 sets forth the privileges which may be invoked by the driver of an emergency vehicle as follows:
"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others. Acts 1962, No. 310, § 1."
(emphasis provided)
As we stated in Cassity v. Williams, 373 So.2d 586, at pp. 589, 590 (La.App. 3 Cir. 1979):
"Although the driver of an emergency vehicle is authorized by LSA-R.S. 32:24 to exceed speed limits and to disregard regulations governing direction of traffic flow, the statute also expressly provides that such a driver is not relieved of the duty to drive with due regard for the safety of others. Carpenter v. Hartford Accident and Indemnity Co., 333 So.2d 296 (La.App. 1 Cir.1976). A breach of this duty will result in a finding of actionable negligence on the part of the driver. Champagne v. McDonald, 355 So.2d 1335 (La.App. 3 Cir.1978)."
See also Kaplan v. Lloyds Ins. Co., 479 So.2d 961 (La.App. 3 Cir.1985); Keating v. Holston's Ambulance Service, Inc., 546 So.2d 919 (La.App. 3 Cir.1989).
We find that Layburn's inattentiveness in failing to see the Horn vehicle, which had the right of way, was the sole cause of the accident. The weather was rainy and the streets were wet. Layburn approached a blind corner on a red light and failed to drive with due regard for the safety of others. Layburn should have proceeded with extreme caution due to the high degree of risk created by entering an intersection against a red light. With the exercise of due care, Layburn should have seen the Horn vehicle and assured himself that the Horn vehicle had seen his emergency signal and was going to yield prior to proceeding into the intersection. His failure to exercise due care was the proximate cause of the accident.
The duty of care required of motorists when an emergency vehicle approaches is set forth in La.R.S. 32:125, as follows:

*235 "A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."
(emphasis provided)
It is true that "[a] green light does not give a motorist the carte blanche right to cross intersections in total disregard of possible dangers." Funderburk v. Rayfield, 274 So.2d 777, 780 (La.App. 3 Cir. 1973).
"As the favored motorist she was not obligated to look to the left or right before entering the intersection but she was required to maintain a general observation of the intersection. The favored motorist in this situation is held accountable only if the accident could have been avoided with the exercise of the slightest degree of care. Jones v. Winston, 437 So.2d 889 (La.App.2d Cir. 1983)."
Cascio v. City of Monroe, 530 So.2d 1170, 1174 (La.App. 2 Cir.1988).
Horn testified that she did not hear the siren and that she could not see the police unit's flashing lights until the collision was unavoidable. She did notice that one vehicle in the north-bound lane, facing her, was stopped on a green light but reasonably assumed that the driver of that vehicle may have been waiting for her (Horn) to cross in order to make a left turn.
In Cascio, supra, all of the other drivers had stopped their vehicles at the intersection. Additionally, when Cascio saw what she thought was a "stalled" vehicle, she changed lanes to go around the stopped vehicle and accelerated into the intersection. The court found that this maneuver diverted her attention away from the intersection and that, with the slightest degree of caution, i.e., slowing down and looking to her right before entering the intersection, she could have avoided the accident. Notwithstanding this finding of fact, the Second Circuit reduced the liability of Cascio from 40% to 20%.
Unlike the facts in Cascio, wherein the appellate court found Cascio 20% at fault, Horn did not have the benefit of any indication that an emergency vehicle was approaching. Only one vehicle was stopped in the lane opposite Horn, and no evidence was presented to support a finding that Horn did not exercise ordinary caution as she entered the intersection. Thus, we find that Horn was not at fault in causing the accident.

QUANTUM
Horn suffered abdominal pain at the time of the accident, which quickly resolved itself. Additionally, she experienced some lumbar strain or low back pain which greatly improved in the year after the accident.
Shortly thereafter, she began experiencing neck and shoulder pain with continuous headaches. Ultimately, her headaches were diagnosed as occipital neuralgia, for which Dr. Rivet performed an occipital neurectomy or severing of the sensory nerves at the back of the head. This surgery does not result in any residual disability insofar as the nerves are only sensory nerves. Horn's headaches then improved.
At the time of trial, four years after the accident, Horn still experienced intermittment low back pain and some tension headaches, distinguishable from occipital neuralgia, but the evidence did not show that these complaints were related to the accident.
While attempting to pinpoint the etiology of her neck and shoulder pain, tests revealed that Horn was suffering from carpal tunnel syndrome. Surgery was performed *236 on both wrists in mid-1986, and it appears that the surgery aided in her recovery from the shoulder pain. At trial, the evidence revealed a connexity between the accident and her carpal tunnel syndrome, which was either caused or aggravated by the accident. Additionally, tests revealed a partial tear in a ligament in her right hand which, although not requiring surgery, caused some discomfort. A 10% disability of the right wrist was assigned due to the tear in this ligament.
Horn suffered chronic discomfort as the result of pain in her neck, which had not resolved itself at the time of trial. Although numerous tests revealed no cervical disc rupture or herniation, there was some spurring and calcification at the C4-5 level. The evidence showed that the spurring and calcification occurred as a result of the trauma Horn sustained in the January 31, 1985 accident, and that her pain commenced at the same time. It is uncertain whether this spurring and calcification is the cause of her pain or whether her pain is a result of a severe soft tissue injury to the muscles and ligaments of the neck and shoulders, also caused by the accident. Nevertheless, Horn's problems began after the accident and continued, to a lesser degree, until the time of trial. Therefore, we grant Horn an award for her medical bills for the above injuries in the amount of $25,361.30. Additionally, we find that an award of $50,000 for past, present, and future pain and suffering will adequately compensate Horn for her physical and mental pain and suffering.
Although mentioned by the plaintiff's appellate brief, the plaintiff's petition does not pray for an award for loss of wages although substantial evidence was presented on the subject. Assuming the pleadings were expanded to include a loss of wages, we do not find that plaintiff has proven any claim for either loss of wages or impairment of earning capacity.

CONCLUSION
Based upon the foregoing, the judgment of the trial court is reversed and,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of JEAN F. HORN and against CITY OF LAFAYETTE, in the amount of TWENTYFIVE THOUSAND THREE HUNDRED SIXTY-ONE and 30/100 ($25,361.30) DOLLARS in special damages and FIFTY THOUSAND AND NO/100 ($50,000.00) in general damages, with legal interest thereon from date of judicial demand. Liberty Mutual Insurance Company, intervenor herein, is entitled to full reimbursement of workers' compensation and medical benefits it has paid to Jean F. Horn, plaintiff, payable according to law.
Costs at the trial level and on appeal are assessed to defendant-appellant, CITY OF LAFAYETTE.
REVERSED AND RENDERED.
NOTES
[1] Thrifty Cab's workers' compensation carrier intervened in this lawsuit.
[2] The trial court found, as a fact, that Officer Layburn was responding to an emergency call. Layburn, although present at trial, did not testify and no direct evidence was presented at trial by defendants as to this issue.
[3] There was some dispute at trial as to whether Officer Layburn was utilizing his siren at the time of the accident. A determination of this factual issue is not essential to our finding.