liSAUNDERS, Judge.
Plaintiff-appellant, Ronald Chris Baudoin, filed suit to recover damages for personal injuries sustained when he was broadsided by a vehicle driven by Yvonne Opie. Following trial by jury, the jury assessed 10% comparative fault to plaintiff. Plaintiff appeals this assessment and additionally main *555 tains that the trial court’s award of $25,-000.00 for pain and suffering, $5,000.00 for disability, and $15,000.00 for future medical expenses are inadequate to compensate him for his injuries.

FACTS

This personal injury action arises from an intersectional collision that occurred on May 3, 1994, at the corner of Sears Drive and Johnston Street in Lafayette, ^Louisiana. As Mr. Baudoin entered the intersection traveling west on Sears Drive, he was broadsided by a vehicle driven by defendant, Yvonne Opie, traveling north on Johnston Street, who failed to stop at a red light.
Following suit, the matter was tried on October 18, 19 and 20, 1995. The jury found Ms. Opie 90% at fault and assessed plaintiff with 10% comparative fault. Mr. Baudoin was awarded general damages of which $25,-000.00 was for pain and suffering and $5,000.00 for disability. Mr. Baudoin also was awarded future medical expenses in the amount of $15,000.00.
From this judgment, only Mr. Baudoin appeals. He first contends that his assessment of 10% comparative fault is erroneous, given that he had the green light and acted reasonably. Additionally, Mr. Baudoin seeks an increase in quantum.
Defendants’ answer to plaintiffs appeal does not dispute any of the components of the relief awarded to the plaintiff but only contends that the damages awarded are sufficient.

COMPARATIVE FAULT

La.Civ.Code art. 2323 reads as follows:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
The factors to be considered when assigning fault were enumerated in Watson v. State Farm Fire and Cas., Ins. Co., 469 So.2d 967, 974 (La.1985):
(1) [Wjhether the conduct resulted from inadvertence or involved an awareness of the danger[;]
(2) how great a risk was created by the conduct[;]
(3) the significance of what was sought by the conduct!;]
|3(4) the capacities of the actor, whether superior or inferior!;] and
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by the concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Apportionment of fault is an issue of fact, and the trial court’s findings in this respect should not be disturbed on appeal in the absence of manifest error. Monceaux v. Jennings Rice Drier, Inc., 590 So.2d 672 (La.App. 3 Cir.1991). The issue presented is whether Mr. Baudoin was at fault for failing to look to either side to determine if there was any traffic approaching, when he had the right of way (green light).
In making a determination as to whether or not Mr. Baudoin’s conduct under the circumstances constituted negligence, we must first define the degree of care required of Mr. Baudoin as he entered the intersection favored by the green light. The court in Champagne v. McDonald, 355 So.2d 1335, 1343-1344 (La.App. 3 Cir.1978), addressed generally the duty of a motorist approaching an intersection controlled by a traffic signal, when the light facing him is green:
A motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right-of-way. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (La.1964); Carter v. *556 New Orleans Public Service, Inc., 305 So.2d 481 (La.1974). The favored motorist is not obligated to look to his left or right before entering the intersection. Correge v. Webb, 284 So.2d 355 (La.App. 4th Cir.1973, writ refused); Bradley v. Allstate Insurance Co., [307 So.2d 132], supra; Keyser v. Triplett, 322 So.2d 294 (La.App. 1st Cir.1975, writ refused); Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir.1976, writs refused), and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. Bradley v. Allstate Insurance Co., supra; Bourgeois v. Francois, supra. All that is required is that the favored motorist maintain a general observation of the controlled intersection. Jordan v. Great American Insurance Company, 248 So.2d 363 (La.App. 4th Cir.1971); Modica v. Manchester Insurance & Indemnity Go., 284 So.2d 791 (La.App. 4 Cir.1973).
UThe record clearly shows that while Mr. Baudoin did not look to either side, he was attentive to what was going on about him. Mr. Baudoin indicated that there was traffic waiting at the light, remembered that there was a car' behind him as he waited at the light, and indicated that there was traffic facing him across the intersection. Furthermore, Mr. Baudoin contended that he was not aware of the vehicle that hit him until he had already begun to traverse the intersection and, at this point, it was too late to avoid the accident.
Our approach of the law, as quoted above, is that Mr. Baudoin proceeded through the green light, he had a duty to maintain a general observation of the intersection and to observe other traffic approaching him from his front, but not to be alert to the possibility of vehicles violating the red light from either side.
Defendant’s chief response is that the accident could have been averted if plaintiff had exercised the slightest bit of care as he crossed the intersection. In support of her position, Ms. Opie cites, inter alia, Arceneaux v. Wallis, 94-CA-2016 (La.App. 4 Cir. 4/26/95); 654 So.2d 1117; Horn v. City of Lafayette, 578 So.2d 232 (La.App. 3 Cir.), writs denied, 584 So.2d 1165, 1167 (La.1991); Funderburk v. Rayfield, 274 So.2d 777 (La.App. 3 Cir.1973). In Arceneatix, a motorist who failed to stop at a stop sign hit a bicyclist riding against traffic. This case is inapplicable because here, we are confronted with a motorist that had the right-of-way. Fun-derburk involved an intersectional collision between a motorist who had the right-of-way and a motorist in a funeral procession. The court found each negligent, concluding that the headlights of the automobiles in the funeral procession offered sufficient notice that plaintiff could no longer rely on the right-of-way given to her by the green light. Finally, Horn actually supports the plaintiffs position as it involved a motorist with the right-of-way who was struck by an emergency vehicle that entered an intersection against a red light. The court concluded that Horn did not have the benefit of any ^indication that the emergency vehicle was approaching and determined that Mrs. Horn exercised ordinary caution as she entered the intersection.
Accordingly, we find favor in plaintiffs position and rule that the trial court erred in assessing Mr. Baudoin with any responsibility for his injuries.

AWARD OF GENERAL DAMAGES

The trier of fact is granted much discretion in the award of general damages, i.e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life style which cannot be measured definitively in terms of money. Anderson v. Welding Testing Lab., Inc., 304 So.2d 351 (La.1974). The question on appeal is not whether a different award may have been more appropriate, but whether the trial court’s award can be reasonably supported by the record. Montgomery v. Opelousas General Hosp., 546 So.2d 621 (La.App. 3d Cir.), writ denied, 551 So.2d 630 (La.1989) (and cases cited therein).
Appellate review of general damage awards involves a two step process. The first inquiry is whether the award for the *557 particular injury under the circumstances is a clear abuse of the much discretion of the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979). If an abuse of discretion is found, then the second inquiry allows an appellate court to review prior awards to determine the highest or lowest award reasonably within the trier of fact’s discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). However, as stated by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular’ injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
16Id. at 1261.
Black v. State, Through Public Safety, 94-1305, p. 9 (La.App. 3 Cir. 5/17/95); 657 So.2d 270, 276, writ denied 95-1546 (La.9/29/95); 660 So.2d 876, writ denied, 95-1528 (La.9/29/95); 660 So.2d 876.
Guided by these principles, our review of the evidence and the testimony presented, we cannot say that the general damage awards were abusively low, as the plaintiff contends.
Dr. Franklin, a doctor of physical medicine and rehabilitation, first saw Mr. Baudoin on May 23, 1994. Initially, Dr. Franklin diagnosed Mr. Baudoin as having a soft tissue injury, a sprain in the lower back region. Following a routine check-up, Dr. Franklin reported that the patient’s condition seemed to have improved, but Baudoin’s continuing complaints of pain to the region were sufficient to have Dr. Franklin order further testing, including a MRI and a CAT scan. On September 16, 1994, Dr. Laborde performed these tests, following which Baudoin was diagnosed with a herniated disk at the L5-S1 level.
Disputing these findings, Dr. Clifton Shepherd testified that the September 16, 1994, MRI test was of such poor quality that Dr. Laborde’s report of a positive diagnosis to the right lateral focal disc (herniation) and posterior displacement of the right S-l nerve root was inaccurate. Dr. Shepherd testified that because three-fourths of the images were blurred and not of diagnostic value, he subsequently ordered the same procedures, a MRI and a CAT scan, which took place April 6, 1995. After viewing the results, Dr. Shepherd determined that he did not see a herniated disc and contrary to Dr. Louis C. Blan-da, plaintiffs orthopedist, found no need for surgical intervention. Faced with this conflicting testimony, the jury clearly was persuaded by defendant’s position that plaintiffs injuries were soft tissue related. After reviewing pthe evidence, we decline to upset its conclusions which were based on arguably creditable expert evidence.
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert" are patently unsound. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Economy Auto Salvage v. Allstate Ins. Co., 499 So.2d 963 (La.App. 3 Cir.), writ denied, 501 So.2d 199 (La.1986); Thompson v. Tuggle, 486 So.2d 144 (La.App. 3 Cir.), writ denied, 489 So.2d 919 (La.1986); See Graver Tank & Mfg. Co. v. Linde Air Products, Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949); Berger v. Iron Workers Reinforced Rodmen, Local 201, 843 F.2d 1395 (D.C.Cir. *558 1988) cert. denied, 490 U.S. 1105, 109 S.Ct. 3155, 104 L.Ed.2d 1018 (1989); W.S. Shamban & Co. v. Commerce & Industry Ins. Co., 475 F.2d 34 (9th Cir.1973); Hicks v. U.S., 368 F.2d 626 (4th Cir.1966); U.S. v. Springfield, 276 F.2d 798 (5th Cir.1960); Byron v. Gerring Industries, Inc., 328 N.W.2d 819 (N.D.1982); 9 Wright & Miller, Federal Practice and Procedure, § 2586 (1971).
Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990).
Accordingly, we decline to upset the jury’s damages award. Considering all of the evidence in the record, we conclude that the damages allocated are within the trial court’s discretionary range and for this reason, we pretermit any analysis of prior awards to determine an appropriate award.

FUTURE MEDICAL EXPENSES

Plaintiff argues that there is every indication that he will need future medical care for the injury he sustained to his lower back, an alleged herniated disc at the L5-S1 level and that he has sufficiently given an adequate estimate of the costs of these future expenses.
Future medical awards are speculative and not susceptible of mathematical certainty. However, like every element of special damages, future medical costs must be established with some degree of certainty. Awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost. Durkee v. City of Shreveport, 587 So.2d 722, 731 (La.App. 2d Cir.1991), writ denied, 590 So.2d 68 (La.1991).
Is Cage v. Caruso, 611 So.2d 704, 709 (La.App. 4 Cir.1992); see also, Revel v. Snow, 95-162 (La.App. 3 Cir. 11/2/95); 664 So.2d 655, writ denied, 95-2820 (La.2/2/96); 666 So.2d 1084.
Although Dr. Blanda suggested back surgery on the occasion of the first visit, Dr. Shepherd, who saw Mr. Baudoin on February 7 and April 10, 1995, found no herniation and determined that he was not a candidate for surgery. Moreover, as mentioned earlier, Dr. Shepherd, along with Mr. Baudoin’s own treating physician, testified that the first MRI film taken September 16, 1994, was blurry and thus was not good diagnostic quality.
Also, Dr. Blanda testified after viewing the MRI and cat scan done in April of 1995, that the impression appeared to be a small, central focal disc protrusion, with no evidence of a nerve root displacement and surgery would not be necessary if there is no root pressure. However, Dr. Blanda still maintained that, in his opinion, surgery may be necessary in order to clear up the problem or the plaintiff could elect not to have the surgery and simply endure the pain. Additionally, Dr. Blan-da testified that he could not determine when a disc becomes herniated or when a bulge first appears, and further stated that other causes may lead to a bulge or herniated disc besides trauma from an accident; most common are bending, falling or even heavy lifting. Dr. Blanda even testified that it was possible for the bulge to be pre-existing.
Despite Mr. Baudoin’s effort to establish his need for surgery in the future, the jury, after hearing the testimony regarding Mr. Baudoin’s subjective complaints of pain as related by the physicians and the testimony of the several expert witnesses, determined that the injury he sustained was not of the nature that plaintiff suggested and as such, would not require the medical treatment plaintiff requested. Thus; the jury could have reasonably concluded that any bulge in the discs in Mr. Baudoin’s back 19wouId only need conservative treatment in the future and not surgery. Accordingly, its award of $15,000.00 for future medical expenses constitutes no abuse of discretion.

DECREE

For the foregoing reasons, that part of the judgment of the trial court which assigned 10% comparative fault to plaintiff is reversed and defendant is found to be 100% at fault. The remainder of the judgment of the trial court is affirmed. All costs at the trial level and on appeal are assessed to defendants.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.