liAMY, Judge.
In this case involving injuries allegedly sustained as a result of an intersectional collision, the jury found that the defendant, Savanne D. Rougeau, was 50% at fault for the accident. The jury awarded the plaintiff, Sharron Jenkins, $10,000.00 in general damages. Additionally, the jury found that the defendant’s insurer, Clarendon America Insurance Company, breached the duty of good faith and fair dealing in settling the claim. The jury awarded the plaintiff $5,000.00 in penalties as a result of this breach. For the following reasons, we reverse the jury’s apportionment of fault to the defendant and the finding that the defendant’s insurance company breached its duty of good faith and fair dealing in settling the claim.
DISCUSSION OF THE RECORD
The automobile accident at issue in this case occurred in Eunice, Louisiana on December 18, 1994. In the petition instituting the matter now before this court, the plaintiff, Sharron Jenkins, alleged that, on the morning of the accident, she was a 12guest passenger in a vehicle driven by her sister, Pamela M. Jenkins. Further, she alleges that upon entering the intersection of Highway 198 and Martin Luther King Drive, the vehicle in which she was traveling had the right-of-way at the light and that it was struck by the vehicle driven by the defendant, Savanne D. Rougeau.[1] The plaintiff maintained in the petition that “[t]he defendant acted in a reckless and negligent manner by ignoring the traffic signal, which was red.” Additionally, the plaintiff maintained that she was severely injured as a result of the defendant’s alleged negligence, namely: a broken leg for which she was hospitalized and received surgery. The plaintiff sought general damages, both past and future medical expenses, and lost wages. Additionally, the plaintiff named Ms. Rougeau’s insurer, Clarendon America Insurance Co. (Clarendon), as a defendant and sought excess judgment “due to bad faith for denying the claim of [the plaintiff.]”
A jury trial was held on October 28, 1995, at which, the jury found that both the defendant and Pamela Jenkins were 50% responsible for the accident and awarded the plaintiff $10,000.00 in general damages. The jury did not make any award for medical expenses or lost wages. Finally, the jury found that Clarendon had breached its duty of good faith and fair dealing and, accordingly, awarded $5,000.00 for this breach. Both parties now appeal.
The plaintiff argues that the trial court erred in the following: (1) Awarding inadequate general damages; (2) Failing to award any damages for past lost wages, diminished earning capacity, and past and future medical expenses; (3) Awarding honly $5,000.00 for Clarendon’s breach of the duty of good faith and fair dealing; and (4) Assessing 50% of the fault for the accident to Pamela Jenkins.
Additionally, Ms. Rougeau and Clarendon assert that the trial court erred in the following: (1) Finding that Clarendon breached its duty of good faith and fair dealing; (2) Finding that Ms. Rougeau was negligent and that her conduct was a proximate or legal cause of the accident; and (3) Attributing 50% of the fault for the accident to Ms. Rougeau.
LAW
Apportionment of Fault
Both parties assert as error, the jury’s apportionment of 50% of the fault to each of the drivers. The plaintiff contends that the record supports a 100% allocation of fault to *843 the defendant while, in turn, the defendant maintains that all of the fault should have been allocated to Pamela Jenkins.
A court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, if “there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Id. at 844.
However, if a court of appeal finds that a reversible error of law or manifest error of material fact was made in the lower court, the court, whenever possible, is required to review the facts de novo from the entire record and render a judgment onjjthe merits. Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742.
In the present ease, the jury found both the defendant and Pamela Jenkins 50% at fault for the accident. Such a verdict indicates that the jury found that one of the parties had the right-of-way, but that she was negligent in failing to see the oncoming car and preventing the accident. Our review of the record, in particular, the questions directed to the defendant by the plaintiffs attorney at trial, indicates that the jury most likely found that the defendant had the green light but was negligent in failing to stop. We cannot reconcile such a verdict given the record and the law now before us.
This court has recently spoken regarding the duty of a driver who has the right-of-way at a traffic signal.
A motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right-of-way. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (La.1964); Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.1974). The favored motorist is not obligated to look to his left or right before entering the intersection. Correge v. Webb, 284 So.2d 355 (La.App. 4th Cir. 1973, writ refused); Bradley v. Allstate Insurance Co., [307 So.2d 132], supra; Keyser v. Triplett, 322 So.2d 294 (La.App. 1st Cir.1975, writ refused); Welton v. Falcon, 341 So.2d 564 (La.App. 4th Cir.1976, writs refused), and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. Bradley v. Allstate Insurance Co., supra; Bourgeois v. Francois, supra. All that is required is that the favored motorist maintain a general observation of the controlled intersection. Jordan v. Great American Insurance Company, 248 So.2d 363 (La.App. 4th Cir.1971); Modica v. Manchester Insurance & Indemnity Co., 284 So.2d 791 (La.App. 4 Cir.1973).
Baudoin v. Opie, 96-269, p. 3 (La.App. 3 Cir. 12/11/96); 685 So.2d 553, 555-56 (quoting Champagne v. McDonald, 355 So.2d 1335, 1343-44 (La.App. 3 Cir.1978)).
As previously stated, the defendant and Pamela and Sharron Jenkins testified that they entered the intersection on a green light. Pamela Jenkins stated, that she and the plaintiff were traveling to Natchitoches, Louisiana on the day of the accident. However, they became lost and were looking for a way onto the highway at the time of the accident. She stated that she had never been to the intersection before, but that she remembers that her light was green. Pamela Jenkins’ version of events was confirmed by the plaintiffs testimony, who also stated that the two were lost and that they entered the intersection under a green light.
However, the defendant contradicted the Jenkins sisters’ recollections by testifying that she remembered the light being green when she entered the intersection. The defendant related the following recollection of events:
I went to the shopping center, and I passed in the back of IGA store and hit Martin Luther King. And when I got to the highway, the light was red, and I parked there on the side of the flower shop. And when the light turned green, I was the front car starting across. I was almost across the highway when — when I *844 heard that hit on my ear. And after that, I didn’t know nothing no more until I woke up in the hospital.
After repeated questioning by the plaintiff’s counsel regarding whether the defendant looked to the right and the left before proceeding through the intersection, the following exchange took place:
Q. Mrs. Rougeau, is it your testimony today that you looked right or left?
| (A- Yes, ’cause that’s what I told you, I seen the cars on each side had stopped ’cause the red light was red going east and west. Coming from — going this way and that way (indicating), the cars was stopped on each side the road, and I was in that center on Martin Luther King and I had the green light, and all the other ears was stop, so I was the front car and I started across; and, just before I got over, that’s when I heard the sound of the car.
Despite this response, the defendant’s testimony does not clearly indicate that she looked to the right and the left. However, her responses consistently indicate that she was aware that the cars in the east-west bound lanes had come to a stop and that her traffic signal had turned green before she proceeded through the light.
The defendant’s version of events was supported by the testimony of several other witnesses. First, Richard Paul Bertrand testified that, at the time of the accident, he was in the lane facing the defendant, ie., he and the defendant should have been given the same traffic signal given the synchronization of the lights. Mr. Bertrand stated, in part, the following:
Basically, I was on the way to pick up donuts for a church function that was being held that morning. I came off of Vine Street, which is a block parallel to — a street parallel to Laurel one block away from Laurel. And when I came up on that, I made a right turn and then headed toward the red light that intersects Martin Luther King and Laurel. And I came to a stop there; and, as far as my recollection is, I remembered seeing, from the distance pretty far back, traffic coming, okay, on Martin Luther King moving from the south coming north. Okay? I — again, as I reiterated to the police at the time and have said, I do not remember actually that I can definitely say and visually say that I remembered seeing or have a memory of a light change or light changing, but I do vividly remember pulling up on the intersection wanting to make my left turn, but waiting for traffic to come through. And . the next thing I knew, you know, two cars collided. I don’t know where the — this little gray car went to, and the white car came and bumped into my front bumper of my car.
|7Mr. Bertrand further stated:
As far as I can recollect, other than actually seeing the light change and recollect that I did see the light change, I am under the — not suspicion, but I’m under the feeling that what had — what events that occurred was I’d made a right turn off of Vine going south, I came up to the light, stopped at the light, saw that there was traffic coming from further down, and then either the light had changed, which is my understanding that it would have changed because I do remember pulling up some getting ready to make that left turn, but I couldn’t because traffic was coming across. And then, like I said, all hell broke loose.
Additionally, John Guillory, testified that he knew the defendant and that he was standing on the street comer at the time of the accident. He stated that from his location he could see the defendant’s light and the light opposite the plaintiff’s car. He testified that, at the time of the collision, the defendant had the green light and the light opposite the Jenkins’ ear was red. He further affirmed that although he could see the opposite light was red, he could not actually see the light given the Jenkins’ vehicle.
Finally, the defendant presented the testimony of Charles Ray Moran, a Department of Transportation employee who supervises the traffic signals in an eight-parish area, including the traffic light involved in the instant matter. He stated that, with regard to the signals at the traffic light at issue, “[t]he east and westbound of Laurel Street are green simultaneously; so are the approaches on the Martin Luther King north *845 and south.” He also stated that there were no reported malfunctions with the light on the day of the accident and that there was no record of any synchronization problems with the light.
The response of the jury, finding both Pamela Jenkins and the defendant 50% responsible for the accident, indicates that while one of the parties entered the | gintersection under a red light, the party with the right-of-way failed to exercise sufficient caution to prevent the accident. We find that imposition of such a duty, on either party, is legal error. As stated previously, a defendant with the right-of-way must only maintain a general observation of the intersection. Baudoin, 96-269; 685 So.2d 553. We conclude that the plaintiff did not prove that the defendant failed to do so or that any heightened burden was required. Further, there is no indication that had either driver entered the intersection on a green light that she should have been able to avoid the accident. Accordingly, apportionment of 50% of the fault to the defendant is error.
As the record before us is complete, we must conduct a de novo review and render a judgment on the merits. See Ferrell, 94-1252; 650 So.2d 742. So doing, we conclude that the record supports a finding in favor of the defendant. The only testimony supporting the plaintiffs version of events was her own testimony and that of Pamela Jenkins, her sister. Not only did the defendant testify that her light was green, but Mr. Bertrand, who was across from her, testified that he edged up to turn left, but had to wait for oncoming traffic to pass. Additionally, Mr. Guillory testified that the defendant’s light was green and that the light opposite the plaintiffs car was red. We find this testimony persuasive evidence that the defendant had the right-of-way through the intersection. Even on a cold record, we conclude that the case presented by the plaintiff is at best ambiguous, so that we must conclude that the plaintiff faded to prove her ease by a preponderance of the evidence. Accordingly, we reverse the jury’s finding that the defendant was negligent and that this negligence was a proximate cause of the accident.
lain view of the foregoing conclusion, it is not necessary to address the plaintiffs remaining assignments which regard quantum of both general and special damages.
Insurer’s Penalties
Both parties assign error in the jury’s conclusion that the defendant’s insurer, Clarendon America Insurance Co., breached the duty of good faith and fair dealing in settling the case. Because of our conclusion that the defendant was not liable, this issue is inherently resolved. Accordingly, the jury’s award of penalties is reversed.
DECREE
For the foregoing reasons, we conclude that the jury erred in determining that the defendant, Savanne D. Rougeau, was at fault in causing the accident at issue and that Clarendon Insurance Company breached its duty of good faith and fair dealing in settling the claim. Accordingly, the judgment of the lower court is reversed. All costs are assessed against the plaintiff, Sharron Jenkins.
REVERSED AND RENDERED.

. We note that the defendant is referred to both as "Savanne D. Rougeau” and "Savanner D. Rougeau.” We will use the former spelling as this spelling is used in both the initial petition instituting this matter and the defendant’s answer.